Michigan Mutual Liability Co., a Corporation, Plaintiff-Appellant, v. Hoover Bros., Inc., a Corporation, J. Phil Hoover, Dick B. Hoover, Derald McGlauchlen, Lillian A. Russell, as Conservator of the Estate and Person of Harold Russell, Incompetent, and John R. Kern, Defendants-Appellees, and Illinois National Casualty Company, a Corporation, Defendant-Appellee and Cross-Appellant.

Gen. No. 51,660.

First District, Third Division.

June 6, 1968.

Rehearing denied June 28, 1968.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Perry L. Fuller and D. Kendall Griffith, of counsel), for appellant Michigan Mutual Liability Company.

William P. Nolan, Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for Illinois National Casualty Company.

Richard Shaikewitz, Wiseman, Hallett, Mosele, Shaikewitz & Struif, of Alton, and Schwarz & Self, of Jerseyville, for Lillian A. Russell, as Conservator of Estate of Harold Russell, Incompetent.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Michigan Mutual Liability Company (Michigan Mutual) instituted this suit for a declaratory judgment. It seeks a finding that it is not obligated under a policy issued to Hoover Bros., Inc. to defend and indemnify the insured in an action arising from a collision involving a truck owned by the insured. It contends that a policy of insurance issued by the defendant Illinois National Casualty Company (Illinois National) to J. Phil Hoover and Dick B. Hoover, d. b. a. Hoover Brothers (a partnership

separate and distinct from Hoover Bros., Inc.) covers the risk in question. Illinois National likewise contends that its policy does not cover the risk. The trial court held that both policies covered the risk and indemnified their insureds for the liability incurred. Both insurance companies have appealed. The facts follow.

J. Phil Hoover and Dick B. Hoover conduct their business through two entities—a corporation known as Hoover Bros., Inc. and a partnership known as Hoover Brothers. The corporation is a dealer in farm implements, while the partnership is engaged primarily in livestock and general hauling. Both are located in Milton, Illinois. On September 19, 1961, the partnership required an extra vehicle for use in the cartage business and to meet that temporary need borrowed from the corporation the truck involved in the accident. John R. Kern, an employee of the partnership, was driving the truck loaded with livestock when in Jerseyville, Illinois, it struck Harold Russell, a pedestrian, who by his conservator instituted the personal injury action.

Michigan Mutual's contention that its policy does not provide coverage for the accident is based on the following clause in its policy, referred to as an "exclusion" clause:

"This policy does not apply:

. . . . . .

"(c) under coverages A [bodily injury liability] . . . (1) to the use by the insured of any automobile as a public or livery conveyance or for carrying property for a charge. . . ."

It argues that the operator of the vehicle was carrying property for a charge and that coverage for such activity was specifically excluded by the terms of the policy. It further contends that the language of the exclusion is unambiguous; that it must be applied as written and

that so applied, it absolves the insurance company of any liability arising from the carriage of property for hire. Notwithstanding the contention that the exclusion is clear and requires no interpretation, it appears to us that we must consider other portions of the policy and the prior negotiations between the parties in order to determine the limits of the coverage.

The Michigan Mutual policy is described as a garage liability policy covering, among other risks, those attendant on the operation of an automobile dealership, repair shop or parking garage, together with the use of any vehicles in connection with the business. Coverage is also extended to incidental and nonbusiness use of vehicles under various circumstances. The negotiations conducted prior to the issuance of the policy reveal the nature of the activities intended to be covered as incidental operations, and we proceed to a consideration of those negotiations.

Prior to 1958 Hoover Bros., Inc. was insured through a different company. In October 1958 the King Gem Insurance Agency, the agency with which the Hoover brothers dealt, asked Michigan Mutual to quote a premium for the liability coverage, with a view to transferring the account from the previous insurer to Michigan Mutual. In its letter, the King Gem Agency described Hoover Bros., Inc. as an implement dealership which was also engaged in seasonal fertilizer hauling and spreading activities. In addition, the agency pointed out that the corporation was engaged in occasional cartage work under a so-called "grandfather permit." The letter further stated as follows:

> "This operation also has been covered under the auto garage policy and I am wondering whether your company would consider these two operations as incidental operations. Please let me know your answer at your earliest convenience."

242

On the back of the letter from the King Gem Agency, Michigan Mutual replied as follows:

"The garage liability quote contemplates coverage for the operation outlined in the last paragraph of your letter of October 15, 1958. These two operations will be considered incidental to the normal garage liability coverage."

The Michigan Mutual policy thereafter issued expressly covered injury or death arising from all operations necessary to the business, including the risk incurred through the occasional use of any automobile for incidental business purposes and the use for nonbusiness purposes of any automobile owned by or in charge of the named insured and used principally in the business activities defined in the policy.

 It is clear from the correspondence between King Gem Agency and Michigan Mutual that the insurance company anticipated that the insured vehicles would be used a certain portion of the time for freight hauling and that coverage for that risk was included in the computation of the insurance premium. Michigan Mutual contends that the correspondence was excluded from evidence and that a policy of insurance may not be amended by parol. The trial court did exclude the letters at one point in the hearing, *but he included them in his ultimate finding of fact.* From this we must conclude that he changed his mind and admitted the evidence. In so doing it is our opinion that he reached the right conclusion. While an insurance policy may not be amended by parol evidence, prior negotiations may be admitted when interpretation is involved. In a mass produced form contract of insurance, terms such as "incidental operations" or "other business purposes" are intentionally general and broad so that the form of contract used may be adapted to the peculiar needs of the insured. The nature of such operations varies with the nature of the in-

sured's business and accordingly it is proper to consider evidence of the intentions of the parties as to the application of catch-all clauses. The court correctly resolved the issue here.

■■ Where a policy of insurance is interpreted by the agent of the company as covering the risk described by the insured, the insurance company is bound by that interpretation unless the contrary interpretation is specifically brought to the attention of the insured or is manifest from the plain language of the contract. Insurance policies are unique in that while no contract is more commonly used, few are less frequently read. Their provisions are generally involved and difficult to fathom. The reason for that phenomenon was discussed in Maretti v. Midland Nat. Ins. Co., 42 Ill App2d 17, 190 NE2d 597, in which a homeowner's policy was issued to an itinerant exhibitor of fireworks for the purpose of covering the risks of his business. By reference, cross reference and recross reference to other sections, the insurance company argued that the accident involved was not covered. We refused to embark on that perambulatory journey of interpretation and held the insurer to the coverage obviously intended. It may be, as was argued in that case, that a document designed to cover a vast variety of risks is desirable since the cost of the insurance may then be dispersed throughout a larger group of policyholders, but it also results in a document which can be deciphered only by an expert. We hold that the policy issued by Michigan Mutual in the case before us covered the accident in question.

■ We proceed to consider whether the policy issued by Illinois National to the Hoover Brothers partnership also covers the risk. The Illinois National policy, captioned "Automobile Policy," was issued to J. Phil Hoover and Dick B. Hoover, d. b. a. Hoover Brothers. A list of the insured vehicles was therein set forth, but the truck here involved was not scheduled. Illinois National con-

244

tends that the policy therefore does not cover the risk. The policy was amended, however, by two endorsements designed to extend the coverage to the risks involved in trucking and common carrier operations. It is argued that these endorsements operate to provide coverage for vehicles used in the cartage business whether they are scheduled in the insurance policy or not.

The first endorsement, entitled "Truckmen (interest covered)" provides in part:

> "Such insurance as is afforded by the policy for an owned automobile or a hired automobile shall apply to the named insured and to any other person including any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. . . ."

The endorsement then defines "hired automobile" as "an automobile used under contract in behalf of, or loaned to, the named insured. . . ."

It appears that the truckmen's endorsement was necessary to adapt an ordinary automobile liability policy to the needs of a common carrier, and the endorsement clearly supersedes many of the provisions of the basic policy. Illinois National argues nonetheless that under strict application of the endorsement, coverage is not extended to the instant occurrence. Our reading of the endorsement leads to the opposite conclusion.

The endorsement in question provides first that any person or organization using an owned or hired vehicle with the permission of the named insured is afforded liability coverage. There follows thereafter a series of noncoverage clauses limiting coverage in those situations in which the vehicle is being operated by a person other than the named insured. Illinois National relies on the first of these clauses to disclaim liability, but that noncoverage clause does not apply to "an employee of the

named insured." John R. Kern, the driver of the vehicle, was an employee of the named insured and was driving a "hired" vehicle in the business of the partnership when the accident occurred. This was an exception to the exception contained in the truckmen's endorsement and accordingly the risk was covered by the policy.

Another point raised, somewhat parenthetically, by Illinois National is that clause (d) of the truckmen's endorsement expressly excludes the owner of any hired automobile. We need only note that the owner of the vehicle in question was not operating it when the accident occurred and hence clause (d) has no application here. The insurance policy covers the accident by virtue of the truckmen's endorsement and we need not consider the effect of the second endorsement which was required by the Illinois Commerce Commission.

■ ■ Insurance policies should be construed strongly against the draftsman and any exceptions to the general area of protection must be stated in such language and bold type as to warrant the conclusion that the insured must have understood and accepted them. Forest City Ins. Co. v. Hardesty, 182 Ill 39, 55 NE 139; McAllister v. Hawkeye-Security Ins. Co., 68 Ill App2d 222, 215 NE2d 477; Maretti v. Midland Nat. Ins. Co., 42 Ill App2d 17, 190 NE2d 597.

The judgment of the trial court is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and SULLIVAN, J., concur.