**Johnie R. Kern, for the Use of Lillian A. Russell, as Conservator, Plaintiff, v. Michigan Mutual Liability Company, Defendant-Appellant, and Illinois National Insurance Company, Defendant-Appellee.**

**Gen. No. 11,156.**

Fourth District.

October 8, 1970.

Pope & Driemeyer, of East St. Louis (Karl D. Dexheimer, of counsel), for appellant.

Reed, Armstrong, Gorman & Coffey, of Edwardsville (James L. Reed, of counsel), for appellee.

TRAPP, J.

This is an appeal from an order of the circuit court granting a summary judgment in favor of Illinois Nation-

al Insurance Company (Illinois National) against Michigan Mutual Liability Company (Michigan Mutual), and denying a motion of Michigan Mutual for summary judgment against Illinois National. The appeal presents the question whether Michigan Mutual is alone required to satisfy a $50,000 personal injury judgment recovered by Lillian Russell as Conservator of the Estate and Person of Harold Russell against Johnie R. Kern, as determined by the trial court, or is entitled to pro rata contribution from Illinois National. Kern, an employee of Hoover Brothers, a partnership, was driving a truck owned by Hoover Brothers, Inc., and loaned to the partnership at the time of the motor vehicle accident which injured Harold Russell. Kern brought suit in garnishment against Michigan Mutual, who insured Hoover Brothers, Inc., and Illinois National, who insured Hoover Brothers, a partnership.

In a prior declaratory judgment action in the Circuit Court of Cook County, Illinois, it was determined that both Michigan Mutual and Illinois National policies covered the risk. That judgment was appealed to the Appellate Court of Illinois, First District, and was there affirmed. No determination was made as to the priority of payment by the companies of any judgment in the suit of Lillian Russell as Conservator of Harold Russell against Johnie Kern. That Court held that by reason of correspondence with the insurance company prior to the issuance of the policy to Hoover Brothers, Inc., an implement dealership, concerning occasional cartage work done by the insured, the loss was covered under the Michigan Mutual policy on trucks owned by Hoover Brothers, Inc. It also held that the Illinois National policy issued to Hoover Brothers, a partnership, engaged in livestock and general hauling, covered the accident by virtue of its Truckmen's endorsement which made it responsible for use of a "hired" vehicle in its business by an employee. That Court decided that the vehicle was a

425

"hired" vehicle. Michigan Mut. Liability Co. v. Hoover Brothers, Inc., 96 Ill App2d 238, 237 NE2d 754.

The Illinois National policy also contained the required endorsement of the Illinois Commerce Commission required of certificated carriers which provided in part, as follows:

> "In consideration of the premium stated in the policy to which this endorsement is attached and regardless of anything stated in the policy or elsewhere to the contrary, . . . the Company hereby agrees to pay, within the limits of liability hereinafter provided, any final judgment rendered and recovered against the insured for bodily injury to or death of any person, or loss of or damage to property of others . . . resulting from the operation, maintenance or use of motor vehicles by virtue of a certificate of public convenience and necessity or a permit issued to the insured by the Illinois Commerce Commission. . . . regardless of whether such motor vehicles are specifically described in the policy or not."

The Appellate Court did not then pass upon the effect of the required Illinois Commerce Commission endorsement, but we think it is material in reference to public policy contentions made by Illinois National.

The portion of the Illinois National Policy which the First District, Appellate Court, held covered the accident in question is as follows:

## "TRUCKMEN

### "(Interests Covered)

> "Such insurance as is afforded by the policy for an owned automobile or a hired automobile shall apply to the named insured and to any other person including any person or organization legally respon-

426

sible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and with respect to the use of a non-owned automobile shall apply to the named insured and to any executive officer of the named insured.

". . .

"Definitions

" 'Owned Automobile' means an automobile owned by the name insured.

" 'Hired Automobile' means an automobile used under contract in behalf of, or loaned to, the named insured except (1) an automobile owned by or registered in the name of the named insured or (2) an automobile classified and rated as a private passenger automobile owned by or registered in the name of an agent or employee of the named insured or a member of the same household as such named insured, agent or employee.

" 'Nonowned Automobile' means any other automobile.

" 'Automobile' includes trailer.

"OTHER INSURANCE—If the insured has other insurance against a loss covered by the policy the company shall not be liable for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of all valid and collectible insurance against such loss; provided, however, the insurance with respect to (1) any automobile of the commercial type while leased or loaned to another motor carrier, (2) any hired private passenger automobile if not written on the specified car basis, and (3) any nonowned automobile, shall be excess insurance over any other valid and collectible insurance available to the insured."

427

Illinois National contends that the truck owned by Hoover Brothers, Inc., and loaned to Hoover Brothers, a partnership, Illinois National's named insured, was a "nonowned automobile" under its Truckmen's endorsement, and therefore, the insurance with respect to the accident caused by Johnie Kern while driving the truck on the partnership business was "excess" insurance and could not be reached until the limits of liability of the Michigan Mutual policy on its named insured, Hoover Brothers, Inc., the owner of the truck, were exhausted.

Michigan Mutual contends that under the Illinois National Truckmen's endorsement vehicles are classified in three classes, to wit: owned, hired and any other.

■ We think that the controlling principle to be found in the cases involving the respective liability of two or more automobile liability carriers is that the question is to be determined from a construction of the language employed by the insurers in their respective policies. Jensen v. New Amsterdam Ins. Co., 65 Ill App2d 407, 213 NE2d 141, 143; Iowa Nat. Mut. Ins. Co. v. Fidelity and Casualty Co., 62 Ill App2d 297, 301, 210 NE2d 622, 624; Continental Cas. Co. v. American Fidelity Co., 275 F2d 381, 384; McFarland v. Chicago Express, 200 F2d 5, 7.

The Truckmen's endorsement provides three classifications of automobiles with reference to the named assured which are (1) an automobile owned by the named assured, (2) an automobile hired on behalf of the named assured, with two exceptions, and (3) a nonowned automobile which is defined as "any other automobile."

It should be obvious that it would have been a simple matter to have specifically provided that liability in respect to a "hired" automobile was excess insurance, as was the case in Continental Cas. Co. v. American Fidelity Co., 275 F2d 381. It is also plain that Illinois National's definition of "hired automobile" contains two exceptions,

428

and therefore the two exceptions would fall in the classification of "any other automobile" and would be "non-owned." To adopt the interpretation given by Illinois National would render the exceptions to the definition of "hired" meaningless.

Additionally, under the paragraph entitled "Other Insurance" and after the word "provided," first, one form of "owned" vehicle, i. e., a commercial type loaned to another carrier is covered as excess only, and second, "any hired private passenger automobile if not written on a specified car basis" is covered only as excess.

█ If it was intended that all "hired" vehicles were to be covered as excess would it be stated that a hired private passenger car, if not written on a specified car basis, should be excess? Certainly, in construing the language of a contract it must be assumed that language is inserted for a purpose. It reasonably appears that placing one type of "owned" vehicle and one type of "hired" vehicle in the class of "nonowned" vehicles was the intent of the endorsement.

If it were intended to use the simple classification of "owned" and "nonowned" for excess it would hardly have been necessary to define the terms. We are cognizant of the fact that this classification by definition has other uses in the policy. We cannot regard owned and nonowned as the sole classification for excess because even an "owned" vehicle is excess if the vehicle is commercial and is loaned out.

The California Court of Appeals in Wilshire Ins. Co. v. Transit Cas. Co., 248 Cal App2d 719, 56 Cal Rptr 861 (1967), had practically the identical situation as that here presented. The court said, p 864:

> "It is obvious, therefore, that the quoted clause was not intended to define automobiles, but to classify them into three groups, by defining owned auto-

429

mobiles and hired automobiles and putting all others into a classification called 'nonowned automobiles.' "

and again, p 864:

"If the automobile is hired it is not one of the others. If Transit, in its policy, chooses to give the term 'nonowned automobile' a restricted meaning, it should not be heard to say that it did not do so."

■■ The California court found that no public policy was violated if the owner's policy was held to be primary. We note here that this is not the ordinary case of a casual nonowner driver, but is a case in which the very cartage business which Illinois National insured and was required by the Illinois Commerce Commission endorsement to insure was the business engaged in at the time of the accident. Johnie Kern, Hoover Brothers partnership's employee, was driving a load of livestock in the borrowed truck when Harold Russell, the pedestrian, was struck. We find no public policy which requires us to favor the insurer of the lessee, but even such a policy would not override the language of the policy.

Illinois National cites Manufacturer's Casualty Ins. Co. v. Great American Indemnity Co., 91 F Supp 18 (ED Penn 1950), as reaching a different result from that obtained in Wilshire Ins. Co. v. Transit Cas. Co., 248 Cal App2d 719, 56 Cal Rptr 861. In that case the court did not say that hired and nonowned were equivalents, but rather that definitions similar to those here involved were related to the issue of the "named insured." The court said that since a doubt existed as to whether the "hired" vehicle was loaned to the "named insured" corporation's president in his official capacity or loaned to the president in his individual capacity the issue could not be resolved without evidence. The effect of the decision was to distinguish between being loaned to the "named insured" and loaned otherwise.

The Michigan Mutual policy provides that it shall share pro rata with other valid collectible insurance covering the risk. We find that the applicable portion of Illinois National's "other insurance" clause provides substantially the same.

■ We hold, therefore, that the policies of both companies provide for liability in respect to the judgment in favor of Lillian Russell, Conservator of Harold Russell, against Johnie Kern on a pro rata basis in proportion to the applicable limits of their policies.

The cause is reversed and remanded to the Circuit Court with directions to enter judgment against each company for its pro rata share of the judgment and interest.

Reversed and remanded with directions.

CRAVEN, P. J. and EOVALDI, J., concur.