**DOUGLAS EQUIPMENT CO., Inc., a Corporation, Plaintiff-Appellant,**

v.

**HARTFORD ACCIDENT & INDEMNITY CO., a Corporation, Defendant-Appellee.**

**No. 18155.**

United States Court of Appeals, Seventh Circuit.

Dec. 29, 1970.

Walter W. Ross, Jr., Norbert J. Wegerzyn, Robert G. Schloerb, Chicago, Ill., for plaintiff-appellant; Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., of counsel.

John G. Poust, Jerome N. Groark, Dwight C. Adams, Chicago, Ill., for defendant-appellee; Hackbert, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., of counsel.

Before MAJOR and HASTINGS, Senior Circuit Judges, and KILEY, Circuit Judge.

MAJOR, Senior Circuit Judge.

This diversity action was commenced by Douglas Equipment Co., Inc. (Douglas), against Hartford Accident & Indemnity Co. (Hartford), to recover on policy No. 80C212773, a "Comprehensive General-Automobile Liability Policy," issued by Hartford effective from November 5, 1959 to November 5, 1960 (referred to as the involved policy). The only pleadings in the case are Douglas' complaint and Hartford's motion to dismiss, with numerous affidavits filed in connection with each.

Douglas was engaged in the business of trucking, including the leasing of trucks, and during the relevant period leased Mack Truck No. PT–65LT, serial No. 2333, to Federal Paperboard Company. Gerald Dibble, the latter's driver, was injured while inspecting the truck, as a result of an explosion of a compressed air tank which was a part of its equipment.

The lease agreement provided, "Lessee agrees to provide and maintain in force, a policy of public liability and property damage insurance for the account of whom it may concern with respect to liability for injuries to third persons and damage to, or loss of, property of third persons resulting from the operation of the vehicles leased hereunder. * * *" Federal Paperboard Company complied with this requirement by obtaining coverage with the American Mutual Liability Insurance Company, British and Overseas Company, Ltd., and certain underwriters of Lloyds London. (These companies are referred to as Plaintiff Insurers.)

On February 28, 1961, Dibble filed suit against Douglas in the Superior Court of Cook County, Illinois, for damages on account of personal injuries sustained while operating the leased truck. Hartford was advised of this action but refused to defend on the ground that it was not liable under the involved policy. The state court action was defended by American and resulted in a judgment in favor of Dibble in the sum of $725,000. A compromise settlement was made for the amount of $448,191.76, which was paid by Plaintiff Insurers. Even so, Douglas alleges in its complaint that it "was compelled to and did expend large sums of money for the settlement and payment of said judgment to plaintiff's damage in the. amount of $448,191.76 and did also incur attorneys' fees and other costs of defense."

Hartford's motion to dismiss was predicated upon two grounds, (1) that Douglas, having paid nothing to Dibble in satisfaction of the judgment which the latter obtained, was not the real party in interest as required by Rule 17(a) of the Federal Rules of Civil Procedure, and (2) that the involved policy issued by it furnished no coverage on the leased truck operated by Dibble. It hardly appears open to question but that Plaintiff Insurers who paid the amount of the compromise settlement were the real parties in interest.

Hartford in its brief states, "Douglas Equipment Co. has no financial interest in this case, and did not bring this suit." Douglas does not. deny this statement, but states, "There is no assertion that Douglas did not authorize the suit or objected to the filing of it. Douglas simply did not know when the suit was filed." More than that, Douglas on brief states, "The action is brought by Douglas in behalf of certain other insurers which paid the settlement amount

and therefore is primarily a suit for contribution as well as for the recovery of those expenses incurred by Douglas."

The District Court's judgment order reads:

"There is before the court defendant's motion to dismiss (herein treated by the Court as a motion for summary judgment) and the court, having considered said motion together with the complaint, exhibits, briefs of counsel and affidavits submitted herein, is of the view that said motion should be sustained. It is therefore Ordered that defendant's motion for summary judgment be and it hereby is granted."

Thus, the court treated the motion as one for summary judgment and apparently as though the action was brought on behalf of the real parties in interest. The parties have briefed and argued the case here on that basis and we shall consider it accordingly.

Douglas on brief presents the issue for review, "Was a genuine issue of fact presented in the case at bar so that the trial judge erred in granting Defendant's motion for summary judgment?" Hartford states the contested issue, "Does the contract of insurance involved provide additional coverage for the 'Dibble' occurrence?" The broad issue as stated by Douglas is, of course, correct, but encompasses the more narrow issue as stated by Hartford.

This brings us to a consideration of the terms of the involved policy issued by Hartford to Douglas. The insurance brokerage firm of Insurance Consultants, Inc. acted as agent for Douglas in all matters of insurance. William Boehlke was in charge of the Douglas account and placed various types of insurance for it. Many of Douglas' fleets of vehicles were insured under Hartford automobile policies. In those cases the trucks were scheduled individually by serial number. That was not done as to the truck leased to Federal Paperboard Company (the employer of Dibble), as the lessee was required by the terms of the lease to provide the insurance. New vehicles were purchased and older vehicles were sold by Douglas from time to time. Boehlke as an insur-

ance broker represented a number of insurance companies, including Hartford, and while he was not its employee he executed the involved policy on its behalf. He had been in the insurance business for twenty-six years in various capacities.

The involved policy, under the heading of "Insuring Agreements," contains four paragraphs designated as Coverages A, B, C and D, as follows:

"Coverage A—Bodily Injury Liability—Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.

"Coverage B—Bodily Injury Liability—Except Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

"Coverage C—Property Damage Liability—Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile.

"Coverage D—Property Damage Liability—Except Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Under the heading, "Definitions," the policy states:

"(b) Automobile. Except where stated to the contrary, the word 'automobile' means a *land motor vehicle* or trailer as follows * * *." (Italics supplied.)

The vehicle involved in the Dibble case was a land motor vehicle, and hence an automobile. It is asserted without dispute that Douglas purchased no coverage under A. Coverages C and D are not applicable as both are for property damage liability and the judgment in the Dibble case was for damages as the result of personal injuries.

The policy contains an exclusionary provision, as follows:

> "*This policy does not apply:* * * * (d) *under coverages B and D,* except with respect to operations performed by independent contractors and except with respect to liability assumed by the insured under a contract as defined herein, *to the ownership, maintenance, operation, use,* loading or unloading of * * * (2) *automobiles if the accident occurs away from such premises or the ways immediately adjoining* * * *.*" (Italics supplied.)

This exclusionary language is too plain to be susceptible of interpretation. "This policy" applies to all of its provisions, without limitation, and "automobiles if the accident occurs away from such premises," as was the situation in the Dibble case, are specifically excluded.

Notwithstanding the plain language of the exclusionary clause, Douglas on brief argues, "Douglas is not suggesting to this Court that there is a 'slight' doubt as to the intent of the parties. Rather, Douglas submits that the evidentiary material, together with reasonable inferences drawn therefrom, supports a finding that the parties' intent was to provide products coverage for leased vehicles, and that at best for Hartford, there is a genuine issue as to that material fact."

This argument is predicated upon a provision in the policy entitled "Products Hazard." The term in relevant part is defined, "The term 'products hazard' means (1) *goods* or *products* manufactured, sold, handled or distributed by the named insured * * *; provided, such goods or products shall be deemed to include any container thereof, *other than a vehicle,* but shall *not include* any vending machine or *any property,* other than such container, *rented to* or *located for use of others* but *not sold* * * *.*" (Italics supplied.)

Douglas, apparently in support of its contention that there was an issue of fact as to the coverage furnished by the policy, argues that the proviso at the end of the Products Hazard definition places no limitation upon the scope of such goods or products. On brief it argues, "Rather, the proviso states that 'such goods or products * * * shall be deemed to *include* any container thereof' (Emphasis added). The exclusionary language following thereafter with respect to 'property * * * rented' can hardly be said to apply to 'goods or products' included at the beginning of the definition, but should be interpreted to state an exclusion only with respect to the additional property (containers) added by the proviso."

In our view, this is a weird interpretation of the proviso. While the language includes as a product any container "other than a vehicle," it expressly excludes "any property" (other than such container) "rented to or located for use of others but not sold." This language squarely excludes the Dibble car, which was leased by Douglas but not sold. The proviso is consistent with the exclusionary clause previously discussed and raises no issue of fact as to the coverage furnished by the involved policy.

We think it not necessary to cite or discuss numerous cases called to our attention because each is dependent upon its own particular facts. It is sufficient to note the general rule to be employed in the interpretation of contracts of insurance, and particularly the effect to be given to an exclusionary clause. This being an Illinois case, we quote from the recent Illinois decision, Automobile Underwriters, Inc. v. Hardware Mutual Casualty Company, 120 Ill.App.2d 159, 256 N.E.2d 463, page 466:

> "We are confronted with the task of interpreting the contracts of insurance and determining liability and re-

sponsibility thereunder. We must make this determination from the language used in the policies. Where the terms of an insurance policy are clear and unambiguous the court must give effect to the intent of the parties to the contract in accordance with the clear expression of agreement."

Couch on Insurance (2d), Volume 1, page 838, Sec. 15.93, cites many cases in support of the statement:

"Necessity of reasonable construction. *The rule is that an exception or exclusion which is stated definitely and clearly must be given effect notwithstanding the limits which it places upon the coverage of the contract.* Although the policy is interpreted in favor of the insured, an insurer should not be deprived by *forced construction* of stipulations in the contract which limits the risk which it assumes." (Italics supplied.)

We doubt if Douglas is entitled to a favorable interpretation of the involved policy for the reason, as we have shown, that this case in reality is between Hartford and Plaintiff Insurers rather than between Hartford and Douglas. We need not labor this point, however, because in any event the rule is of no benefit to Douglas because of the plain, unambiguous language of the exclusionary provisions.

In view of what we have held, we could appropriately conclude our opinion at this point. Even so, we are inclined to consider further Douglas' urgent contention that it was entitled to rely upon affidavits to show the intention of the parties and presumably upon parol testimony if it was awarded a trial on the factual issues. This contention obviously is predicated upon the premise which we have rejected, that there was ambiguity in the terms of the policy and particularly in the exclusionary clauses.

The argument is based upon a declaration contained in the policy, that the business of the named insured is "Truck Leasing." On the following page of the policy, entitled "Premium Schedule," one of the hazards for which a premium was paid was "Products (Including Completed Operations)." A description of the products hazard is typed in as "Trucking." The term "Trucking" is further classified on the premium schedule as "Code No. 7174." The premium base for products coverage is "Sales," and under that heading appears the figure "$1,000,000." The premium paid for this coverage was $31.00. It is significant to note that the premium was charged for "Trucking" and not "Truck Leasing." It is argued that this $31.00 premium was for coverage on the leased truck which Dibble was operating at the time he received his injuries. It is obvious, we think, that if this premium purchased coverage for the Dibble truck it likewise purchased coverage for all of Douglas' leased trucks. The amount of the premium itself dispels any such notion, particularly in view of the fact that Plaintiff Insurers charged a premium of $21,883.00 for automobile coverage furnished plaintiff's lessee.

We discern nothing in the situation described which in any way contradicts, impairs or diminishes the exclusionary provision which, as we have shown, renders coverage inapplicable to leased trucks. If there be any doubt on this score, it is completely resolved by a provision at the top of the premium schedule page upon which Douglas' reliance is placed. It states:

"The descriptions of hazards and classifications stated below are subject to the exclusions, conditions and other terms of this policy."

In other words, the products coverage claimed by Douglas was specifically made subject to the exclusionary provisions of the policy, and Douglas is not entitled to prove by affidavit or otherwise that the policy covered a leased truck. There is no issue of material fact and the court did not err in allowing Hartford's motion for summary judgment.

The judgment appealed from is
Affirmed.