**Charles E. ORTMAN, Jr., Plaintiff-Appellant,**

v.

**STANRAY CORPORATION, Defendant-Appellee.**

**No. 18379.**

United States Court of Appeals, Seventh Circuit.

Jan. 14, 1971.

Rehearing Denied Feb. 8, 1971.

Martin Faier, Chicago, Ill., for plaintiff-appellant; John A. Wright, Chicago, Ill., of counsel.

Patrick H. Hume, Richard G. Lione, Sabin C. Bronson, Chicago, Ill., for defendant-appellee; Hume, Clement, Hume & Lee, Ltd., Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

SWYGERT, Chief Judge.

This appeal raises questions concerning the interpretation of a contract for the assignment of a patent and the application of the parol evidence rule.

The plaintiff, Charles E. Ortman, Jr., is the inventor of a device for truing metal wheels of the type used on railroad cars. On May 11, 1959 plaintiff filed an application entitled, "Cutting Tool and Milling Head Insert Therefor," for a United States patent on this device. On September 17, 1963 this application matured into United States patent No. 3,102,736. On the same day as the filing of the patent application, plaintiff entered into an assignment contract with Standard Railway Equipment Manufacturing Company, a division of the Stanray Corporation. This contract, portions of which are set out in the margin,[1]

---

1. The contract reads in relevant part:

THIS AGREEMENT made and entered into this 11th day of May, 1959, by and between CHARLES E. ORTMAN, JR. * * * and STANDARD RAILWAY EQUIPMENT MANUFACTURING COMPANY * * *.

WHEREAS, ASSIGNOR owns the entire right, title and interest in and to the invention disclosed and claimed in an application for United States Letters Patent entitled CUTTING TOOL AND MILLING HEAD INSERT THEREFOR, Serial No. 812,320 * * *

WHEREAS, STANDARD manufactures and sells machines employing milling head inserts of the general type disclosed by ASSIGNOR in the said patent application Serial No. 812,320, and STANDARD desires to acquire ASSIGNOR'S entire right, title and interest in and to the said patent rights; and

WHEREAS, ASSIGNOR is willing to divest himself of the said patent rights

provided that plaintiff would assign all his patent rights in his invention to defendant in return for quarterly installment payments based on the defendant's use of the device. The payments were to continue for ten years or for the life of any patent issued on the application. Paragraph four, however, stated that the patent rights would be revested in plaintiff on thirty days notice to or from defendant and the occurrence of certain stated conditions.

The defendant faithfully performed its contract obligations until July 5, 1964. On June 5, 1964, apparently on the advice of counsel that its use of the cutting device was not covered by the patent's

claim, defendant mailed a notice stating its intention to terminate the agreement pursuant to paragraph four of the contract. Defendant made no further payments under the contract after July 5, 1964, though it continued to use the device.

On August 25, 1965 plaintiff filed a complaint in the district court alleging four causes of action for infringement of the United States patent and of various foreign patents which had been obtained on the invention and one cause of action for breach of the assignment contract.[2] Defendant's motion for summary judgment was denied by the trial court; and, on the defendant's inter-

---

in return for periodic payments from STANDARD over a period generally coterminous with STANDARD'S use thereof and contingent upon STANDARD'S productivity, use or disposition thereof:

NOW THEREFORE in consideration of the mutual promises herein contained, the parties hereto agree as follows:

(1) ASSIGNOR does hereby transfer, sell and assign his entire right, title and interest in and to the said patent rights to STANDARD. * * *

(2) STANDARD shall pay ASSIGNOR for the assignment set out in paragraph (1) hereof as follows:

(a) STANDARD shall pay ASSIGNOR installment payments, each payment in a sum equal to ten percent (10%) of STANDARD'S net quarterly cost for milling head inserts of the type disclosed and claimed in the said patent application Serial No. 812,320, less all discounts, credits and returns, such payments to be made by STANDARD to ASSIGNOR quarterly on or before the tenth (10th) day of the month following the quarter in which STANDARD purchases or otherwise acquires such milling head inserts, providing STANDARD or its agents actually received said milling head inserts.

(b) The payments provided herein shall be made by STANDARD to ASSIGNOR for a period of ten (10) years from the date hereof, or for the life of any patent issued upon the said patent application Serial No. 812,320, or any reissue, divisional or continuation-in-part application therefor, disclosing and claiming ASSIGNOR'S invention in milling head inserts, which is last in time to expire, whichever period is

longer; provided, if no patent has issued on the said application Serial No. 812,320, or any divisional or continuation-in-part application therefor, STANDARD shall only be liable to ASSIGNOR for the said payments during the period that the said application Serial No. 812,320, or any divisional or continuation-in-part application therefor, is pending in the United States Patent Office.

* * * * *

(4) ASSIGNOR, on thirty (30) days advance written notice to or from STANDARD, shall be revested with the entire right, title and interest in and to the said patent rights if STANDARD fails or refuses to make the payments to ASSIGNOR provided for in paragraph (2) hereof or if STANDARD discontinues manufacturing or acquiring milling head inserts of the type disclosed and claimed in the said patent application Serial No. 812,320 for more than one (1) year.

2. The alleged jurisdictional base for the contract cause of action was diversity. The defendant's answer stated that it was a Delaware corporation with principal offices in Chicago. Under 28 U.S.C. § 1332(c), Stanray would therefore be a resident of Illinois, the state of plaintiff's residence. The jurisdictional issue was not raised by either party; and since we believe that this controversy is properly before us under the doctrine of pendent jurisdiction, United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), we need not resolve the factual dispute concerning diversity which was raised by the pleadings.

locutory appeal, the denial was affirmed by this court.[3]

After the remand, defendant's motion to separate the contract issues for purposes of trial was granted, and the parties agreed that there were two issues for determination: whether the contract had been terminated and, if so, whether it was lawfully terminated. At trial, defendant contended that the parol evidence rule would render inadmissible all evidence other than the contract itself and objected to the plaintiff's offering any testimony. After opening statements, while plaintiff's first witness was on the stand, the trial judge interrupted the trial to refresh his recollection of the parol evidence rule. Briefs on the applicability of the rule were submitted and on March 10, 1969, the judge entered a memorandum holding that the assignment agreement was unambiguous and susceptible of a clear and reasonable interpretation on its face. Consequently, the court refused to "attempt to go behind it" and refused to consider plaintiff's offered evidence concerning the circumstances existing when the contract was signed. The court ruled that the fourth paragraph of the agreement gave defendant the option of terminating its payment obligation simply by giving no-

tice and refusing thereafter to make the prescribed installment payments.

Subsequently another district judge, to whom the case had been transferred, filed a memorandum holding that the contract had been properly terminated on July 5, 1964, and that defendant's payment obligations ceased on that date. Judgment was entered to that effect, and plaintiff appeals.

In entering judgment for defendant on the contract cause of action, the trial court accepted the defendant's argument that a condition precedent to the admission of any evidence relating to the meaning of the contract was an initial determination by the court that the contract was ambiguous. Though language in some of the Illinois cases supports this view, we believe that it is incorrect as a general statement of the parol evidence rule. If relevant testimony concerning the circumstances surrounding the signing of a contract is offered, it should generally be heard. The meaning of words cannot be ascertained in a vacuum.[4] The function of interpretation of a contract is to ascertain the intention of the parties as manifested by the words they used to evidence their agreement. This cannot normally be done by an isolated inquiry limited to

3. Ortman v. Stanray Corp., 371 F.2d 154 (7th Cir. 1967). We held that the district court had jurisdiction of the causes of action based on infringement of the foreign patents and that since material issues of fact had been raised, summary judgment would have been improper. The plaintiff has urged on us that that holding is determinative of the question of ambiguity in the contract. We disagree. The parties had focused our attention on the infringement issues and our holding was directed to whether there were significant unresolved factual disputes involving those issues. We did not decide whether extrinsic evidence would be required for the interpretation of the contract.

4. This is clearly recognized by Wigmore, who traces the development of the parol evidence rule and states that:

The truth had finally to be recognized that words *always* need interpretation; that the process of interpretation in-

herently and invariably means the ascertainment of the association between words and external objects; and that this makes inevitable a free resort to extrinsic matters for applying and enforcing the document. * * * Perhaps the range of search need not be extensive, and perhaps the application of the document will be apparent at the first view; but there must always be a traveling out of the document. * * * Once freed from the primitive formalism which views the document as a self-contained and self-operative formula, we can fully appreciate the modern principle that the words of a document are never anything but indices to extrinsic things, and that therefore *all the circumstances must be considered which go to make clear the sense of the words,*—that is, their association with things. 9 Wigmore on Evidence § 2470 at p. 227 (3d Ed. 1940).

the four corners of a document; it requires that a court attempt to place itself in the same situation as that of the parties at the time of the execution of the contract.

■ The standard to be used in interpreting an integrated contract is:

[T]he meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration. * * * Restatement of Contracts § 230 (1932).

Thus, relevant parol evidence is always admissible to assist in the determination of what the words used in an integrated writing mean;[5] and the parol evidence rule is placed in its proper role of focusing interpretation on the meaning of the terms embodied in the writing and of rendering all evidence inoperative to vary those terms once their meaning has been discovered.[6] Admitting evidence of prior negotiations and agreements for the purpose of discovering the meaning of the terms used in the integration does not violate the parol evidence rule. "Such testimony does not vary or contradict the written words; it determines that which cannot be varied or contradicted."[7]

■ Though the language and holdings of the various Illinois cases involving the parol evidence rule cannot be harmonized, we believe that our interpretation of the rule is generally consistent with the decisional law of Illinois. The most instructive Illinois case is Martindell v. Lake Shore National Bank, 15 Ill.2d 272, 283, 154 N.E.2d 683, 689 (1958), where the supreme court held:

The primary object of the construction of a contract is to give effect to the intention of the parties, greater regard being given to such intent, when clearly revealed, than to any particular words used in expression thereof. * * * In general, the intention of the parties is to be determined from the final agreement executed by them, rather than from preliminary negotiations and agreements * * * but previous agreements, negotiations and circumstances may be considered in determining the meaning of specific words and clauses. * * * Similarly, under well recognized exceptions to the parol evidence rule, extrinsic evidence is admissible to show the meaning of words used in a contract where there is an ambiguity, or when the language is susceptible of more than one meaning.

Since the court found that "the agreement is not without ambiguity and inconsistency," 15 Ill.2d at 280, 154 N.E.2d

---

5. *See* Restatement of Contracts § 238 (1932) ; *see also* the less restrictive rule stated in Restatement (Second) of Contracts § 240 (Tent. Draft No. 5, 1970). Comment b, § 240 explains that:
   Words, written or oral, cannot apply themselves to the subject matter. The expressions and general tenor of speech used in negotiations are admissible to show the conditions existing when the writing was made, the application of the words, and the meaning or meanings of the parties. Even though words seem on their face to have only a single possible meaning, other meanings often appear when the circumstances are disclosed.

6. *See* Restatement (Second) of Contracts, Introductory Note to Topic 3 at pp. 120–21 (Tent. Draft No. 5, 1970).

7. *Corbin on Contracts* § 579, at pp. 421–322 (1960). Corbin also states, § 579, at pp. 412–13, that:
   No parol evidence that is offered can be said to vary or contradict a writing until by process of interpretation it is determined what the writing means. The "parol evidence rule" is not, and does not purport to be, a rule of interpretation or a rule as to the admission of evidence for the purpose of interpretation. Even if a written document has been assented to as the complete and accurate integration of the terms of a contract, it must still be interpreted; and all those factors that are of assistance in this process may be proved by oral testimony.

at 688, it had no occasion to hold whether the presence of "ambiguity" is a necessary prerequisite to the admission of extrinsic evidence. The whole thrust of the quoted language from the court's opinion, however, is toward the admission of evidence in aid of interpretation and a finding of ambiguity is not stated to be necessary before "previous agreements, negotiations and circumstances may be considered in determining the meaning of specific words and clauses."

Another recent Illinois case which recognizes the necessity of admitting extrinsic evidence in aid of interpretation of seemingly clear contract language is, Michigan Mutual Liability Co. v. Hoover Bros., Inc., 96 Ill.App.2d 238, 237 N.E.2d 754, 756 (1968). There, an insurance policy excluded "carrying property for a charge" from its coverage. The insured contended that injuries caused by one of its trucks while engaged in a cartage operation were within the provision covering "incidental operations." In spite of the apparently clear exclusion, the court allowed proof of a letter from the insurance company which stated that such cartage operations were within the "incidental operations" clause. The court said:

> Notwithstanding the contention that the exclusion is clear and requires no interpretation, it appears to us that we must consider other portions of the policy and the prior negotiations between the parties in order to determine the limits of the coverage.
>
> \* \* \* \* \* \*
>
> While an insurance policy may not be amended by parol evidence, prior negotiations may be admitted when interpretation is involved.[8]

We think that an application to the contract between Ortman and Stanray of the principles set out above shows that the trial court erred in determining that it could discover the intention and meaning of the document solely within its four corners. The terms of this contract are not so plain and clear that there can be no question as to their meaning. Plaintiff suggests that the termination provisions of paragraph four of the contract were primarily a security device for plaintiff's benefit. The language is susceptible of this interpretation. As plaintiff correctly points out, paragraph four provides only for "revestment" and does not specify whether the obligation to pay royalties is to continue after revestment. The intended effect and meaning of "revestment" can only be discovered through the process of interpretation, and the use of extrinsic evidence in aid of that interpretation is necessary and proper. The interpretation arrived at by the trial court from its investigation of the document alone is not inevitable. Indeed, an interpretation which gives Stanray the unilateral option to avoid its payment obligations while continuing to use the patented device should be suspect.

Though we believe the trial court erred in its understanding of the parol evidence rule, we must nonetheless determine whether plaintiff offered any relevant proof which the court erred in excluding. At a pre-trial hearing, plaintiff's counsel stated that he intended to call witnesses who would establish the relationship of the parties at the time the contract was made and those incidents in the industry that resulted in the making of the contract. At trial, plaintiff offered a large group of exhibits into evidence. Some of these were copies of correspondence between the parties during the period when the agreement was signed. At least one letter seems clearly relevant since it refers to paragraph four of the agreement as a "recapture" provision and indicates that it was the subject of some negotiation. Evidence of such negotiations would be helpful in determining the meaning to be given to the paragraph. These exhibits were never admitted into evidence,[9] and the trial judge did not

---

8.  96 Ill.App.2d at 242, 243, 237 N.E.2d at 756, 757.

9.  Counsel for both parties advised us at oral argument that the exhibits were never formally admitted.

rely on them since he stated in his memorandum that he would not go outside the document. In his opening statement at the trial, plaintiff's counsel argued that in order to interpret the agreement:

[The court] must go into the events surrounding the making of the agreement surrounding the negotiations of the agreement, surrounding the performance of the agreement and surrounding the termination of the agreement.

\*　\*　\*　\*　\*　\*

It is our position \* \* \* that the Court should have the benefit of what happened at the time of the making of the agreement—why did the parties make the agreement, what was the relationship of the parties at the time of the making of the agreement and the performance of the agreement—because it is only in that way that the Court can truly ascertain the true intent of the parties in the making of the agreement.

We will offer to prove to the Court today facts from which the intent of the parties—that is, this was an unconditional transfer of property—can be inferred, and essentially, your Honor, that will be the content of the plaintiff's case today.

Plaintiff then offered his first witness. Defendant objected that this testimony would violate the parol evidence rule and asked for an offer of proof; but the judge stated that the witness would be allowed to testify subject to the defendant's objection. Shortly thereafter, the judge interrupted the examination of the witness and called a conference in chambers. The judge then halted the trial, and later ruled he could interpret the contract without the aid of extrinsic evidence.

The only evidence which was offered appears to be the documents marked as exhibits. As we have said, one of these documents appears relevant; but we would be hesitant to find error in the exclusion of a single letter which is not in any way determinative. We believe, however, that on the facts before us, we must reverse. The conduct of the trial court in interrupting the trial was based on an erroneous view of the parol evidence rule and effectively foreclosed plaintiff's opportunity to make a more explicit offer of proof. The plaintiff apprised the court of the general tenor of the evidence he expected to offer and the judge indicated that the evidence would be heard subject to a later ruling on defendant's objection. The halting of the trial was not expected by plaintiff; in these circumstances, we do not think he should be faulted for failing to make his offer of proof more explicit.

On remand the plaintiff must be prepared to show the relevance as an aid in interpreting the contract of any offered evidence. We do not mean that the trial court must hear any evidence which is offered concerning the general relationship between the parties throughout the years 1958–1965.[10] We simply hold that the parol evidence rule does not require the exclusion of extrinsic evidence relevant to the meaning of the contract language and that the plaintiff must be allowed to present whatever proof of relevant circumstances he has at his command.

For the reasons stated herein the judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

10. The plaintiff suggested in a pre-trial brief that he would offer evidence to show that the defendant's wheel-truing division was floundering prior to 1959 and prospered thereafter and that the defendant performed its payment obligation from 1959 to 1964. Unless the plaintiff can suggest some reason why this evidence is more relevant than is readily apparent to the question whether the contract is terminable by the defendant, the trial court would not be required to hear such testimony.

HASTINGS, Senior Circuit Judge (concurring).

I concur in the result only. I would reverse and remand to the district court for the hearing of extrinsic evidence relevant to the meaning of the contract language on the sole and express ground that such language, particularly in paragraph (4), *supra*,[1] is ambiguous, of double or doubtful meaning and in need of interpretation.

The majority opinion evidences considerable research and study of the application of the parol evidence rule. However, with deference, I think the conclusions in this regard are unnecessarily broad as applied to the decisional law of Illinois. As I read the opinion, parol evidence may be introduced and admitted in evidence in any contractual interpretation consideration, no matter how clear and unambiguous the contract language itself may be. Further, such extrinsic evidence may be applied in such interpretation, except, of course, for the purpose of modifying or curtailing its terms. In short, where no ambiguity exists, parol evidence is *always admissible. The net effect of this would seem to be to abrogate the parol evidence rule and proscribe the use of parol evidence only for the purpose of changing the writing.*

Further, I am concerned that the majority opinion, in forecasting what the Illinois Supreme Court would say, goes beyond what it has said. In the cited and quoted opinion, Martindell v. Lake Shore National Bank, 15 Ill.2d 272, 283, 154 N.E.2d 683, 689 (1958), the court there concludes, "Similarly, under well recognized exceptions to the parole evidence rule, extrinsic evidence is admissible to show the meaning of words used in a contract where there is an ambiguity, or when the language is susceptible of more than one meaning." It seems to me that, rightly or wrongly, this presently represents the outer limit to which that court has gone and to which we should go at this time in applying Illinois law.

I fully agree with the majority when it states that "the language and holdings of the various Illinois cases involving the parol evidence rule cannot be harmonized * * *." This is particularly true in the ever present field of insurance law concerning the interpretation of insuring agreements and exclusionary provisions in insurance policies. It is also true of the holdings of our own court. See, for example, a decision just handed down in Douglas Equipment Co., Inc. v. Hartford Accident & Indemnity Co., 7 Cir., 435 F.2d 1024 (December 29, 1970). How often have some of us written as we did there, "This exclusionary language is too plain to be susceptible of interpretation." We further noted the general Illinois rule to be employed in the interpretation of contracts of insurance by citing the recent Illinois case of Automobile Underwriters, Inc. v. Hardware Mutual Casualty Company, 120 Ill. App.2d 159, 166, 256 N.E.2d 463, 466 (1970). There the Illinois court said, "We are confronted with the task of interpreting the contracts of insurance and determining liability and responsibility thereunder. *We must make this determination from the language used in the policies. Where the terms of an insurance policy are clear and unambiguous the court must give effect to the intent of the parties to the contract in accordance with the clear expression of agreement.*" (Emphasis added.)

Finally, I suggest that the ultimate conclusions reached in the majority opinion do not require its broad limitation of the parol evidence rule. I agree when the majority says, "The terms of this contract are not so plain and clear that there can be no question as to their meaning." Similarly, I agree that, "The intended effect and meaning of 'reinvestment' can only be discovered through the process of interpretation, and the use of extrinsic evidence in aid of that interpretation is necessary and proper. The interpretation arrived at by the trial court from its investigation of the docu-

---

1. Set out in footnote 1 in the majority opinion.

ment alone is not inevitable." In short, it is ambiguous, susceptible of more than one interpretation.

The foregoing final conclusions, arrived at without extrinsic evidence for our consideration, alone amply justify and require the use of well recognized and established exceptions to the parol evidence rule. In reversing and remanding, I would rely upon them and in this instance would go no further.

## PETITION FOR REHEARING

PER CURIAM.

Contending that our initial opinion in Ortman v. Stanray, No. 18379 (filed January 14, 1971), prejudged certain issues which were not prsented to us on appeal but which might become relevant on remand, appellee Stanray Corporation petitions for rehearing.

In footnote 3 of our initial opinion, 437 F.2d at 234, we stated that "We held [in Ortman v. Stanray Corp., 371 F.2d 154 (7th Cir. 1967)] that the district court had jurisdiction of the causes of action based on infringement of the foreign patents * * *." Stanray argues that our 1967 opinion, though it upheld the trial court's refusal to dismiss the plaintiff's foreign patent causes of action for lack of jurisdiction, held only that the district court should determine whether "the doctrine of ancillary jurisdiction should be applied * * * after it has interpreted the various rights of the parties under the contract." 371 F.2d at 158. We recognize that saying that the district court was not required to dismiss for lack of jurisdiction may be somewhat different from saying that the court had jurisdiction; but our summary description of the holding on the earlier appeal was intended only to provide some of the procedural background for the present appeal. We did not intend by the footnote to prejudge the propriety of the district court's application of the doctrine of pendent jurisdiction, nor to adopt the diversity theory suggested in the concurring opinion, 371 F.2d at 159. It is still open to Stanray to challenge the dis-

trict court's exercise of jurisdiction over the foreign patent causes of action.

Stanray also takes issue with our statement that "Defendant made no further payments under the contract after July 5, 1964, though it continued to use *the device*." 437 F.2d at 233 (emphasis added.) Stanray argues that one of the issues both in the contract and infringement cause is whether it continues to make or use milling head inserts such as those covered by the patent in suit. Whether this is an issue or not is not before us on this appeal. If it is an issue, we did not by our language intend to prejudge it.

The foregoing clarification of our initial opinion renders reconsideration unnecessary. The petition for rehearing is therefore denied.