Clarence L. KELLY

v.

PHOENIX ASSURANCE COMPANY OF NEW YORK, a body corporate.

Civ. No. 12279.

United States District Court
D. Maryland.

Jan. 17, 1964.

Benjamin C. Howard and Robert L. Karwacki, Baltimore, for plaintiff.

F. Gray Goudy and Herbert Burgunder, Jr., Baltimore, for defendant.

THOMSEN, Chief Judge.

This action for a declaratory judgment calls upon the court to decide at this time whether defendant (Phoenix) is obligated to defend plaintiff (Kelly) in an action brought against Kelly in the Superior Court of Baltimore City by his employer, Tomke Aluminum Company, Inc. (Tomke), in which Tomke seeks indemnity from Kelly for damages it has paid Herbert S. Feldman (Feldman) as the result of an accident at Tomke's plant in Baltimore. The contest is really between Tomke's liability carrier (U. S. Fire) and Phoenix.

Phoenix issued an automobile liability policy in the State of Georgia to London Iron and Metal Company (London), a partnership engaged in buying and selling scrap metal, with its principal place of business in Atlanta. The policy cov-

ered a fleet of motor vehicles and trailers of various types. It contained a customary loading and unloading clause, and an omnibus clause covering an additional insured while using "an owned automobile or a hired automobile", as defined in the policy.[1]

The first question to be decided in this case is whether the tractor-trailer involved in the accident was "a hired automobile". A related question is whether Feldman was an employee of London, in which event an injury to him would be excluded from coverage under the automobile liability policy.

The second question is whether there had been a breach of the "Limitations of Use Endorsement" attached to the policy.

In the course of its business London bought aluminum dross from the Bonnell Company, in Newnan, Georgia, and sold it to Tomke, in Baltimore. London entered into the following arrangement with Feldman, who owned two tractors and several trailers and was engaged in the hauling business in a modest way. Feldman agreed to keep two of his trailers available for London's use, one to be stationed at all times under a chute in the Bonnell plant; one of the trailers was to replace the other as it became full, and Feldman contracted to haul the trailers loaded with aluminum dross to Tomke's plant in Baltimore.[2] Feldman issued a bill of lading for each trip, and was paid a flat sum, which varied depending upon whether he hauled a full load, a partial load, or no load for London on the return trip. Feldman sometimes hauled produce for others on the return trip south.

On May 28, 1958, during the policy period, while Feldman was at Tomke's plant in Baltimore, having delivered a load of aluminum dross, and

---

1. The policy covered the named insured with respect to all automobiles.

2. London also shipped aluminum dross to Baltimore by rail, but such shipments are not important in this case, since they

do not prevent the trips which Feldman made to Baltimore with his tractor-trailers from being "regular and frequent", within the meaning of the limitations of use endorsement.

while, it is alleged, metal forms or dies were being loaded onto Feldman's trailer by Kelly, to be hauled south for London, Feldman was injured. In a second amended declaration which Feldman filed in a Maryland State Court against Kelly, Tomke, and United Iron and Metal Co. (United), of which Tomke is a subsidiary, Feldman alleged that he was injured by the negligence of the defendants therein when he was struck by the claw of a crane, operated and controlled by Kelly as the agent, servant or employee of Tomke, which was used in loading the trailer. Phoenix contends that the injury was not caused by the operation of the crane nor indeed by the loading operation.[3] Neither side produced Kelly as a witness in the present case.

U. S. Fire undertook the investigation of the accident and the defense of its insured, Tomke and United, by G. C. A. Anderson, Esq., of Baltimore. On behalf of Kelly, U. S. Fire notified Phoenix of the accident and called on it to defend Kelly. Phoenix denied coverage. The U. S. Fire policy did not contain an omnibus clause covering Kelly, but U. S. Fire engaged Benjamin C. Howard, Esq., to represent Kelly in the Feldman suit.

Before that suit came to trial, U. S. Fire settled Feldman's claim for $142,-000, and the attorney it had employed to represent Tomke and Kelly, together with the attorney for Feldman, appeared before a judge in the Superior Court of Baltimore City and consented to the entry of a judgment in the amount of $142,000 against all defendants. The Court said:

"This judgment is against all the defendants jointly and severally, but only on the question of the plaintiff's rights against the defendants. Nothing done here today in any way goes to any question as to claim of liability for contribution or otherwise on any rights, duties or obliga-

tions of any of the defendants, whether original or third party, as against each other. Accordingly, it is ordered by the Court pursuant to this Court's general powers and the Maryland Rules, including, but not by way of limitation, Rule 315(e) 3, that the judgment entered herein shall not be construed or constitute any finding or adjudication with respect to the respective rights, duties, obligations or liabilities of the several defendants, whether original or third party, between themselves or any of them with respect to the claim asserted in the third party complaint filed herein or the answers thereto or otherwise."

Kelly did not consent to the settlement or to the entry of the judgment against him.

Shortly thereafter U. S. Fire, in the name of Tomke, through Anderson as its attorney, filed an action against Kelly in the Superior Court of Baltimore City alleging that the injury to Feldman had been caused by the active negligence of Kelly and claiming indemnity from Kelly. The present declaratory judgment action was then filed by Howard, as attorney for Kelly, against Phoenix, claiming that under the facts set out above Kelly was an additional insured under the policy issued to London by Phoenix, in view of the loading and unloading clause contained in that policy, and that Phoenix is obligated to defend and indemnify him in the action brought against him by Tomke.

The omnibus clause in the Phoenix policy granted coverage to an additional insured only while using "an owned automobile or a hired automobile", as defined in the policy. Feldman's tractor-trailer, the vehicle which it is claimed was being loaded at the time of the accident, was not listed among the "owned automobiles" in the schedule attached to the policy. Indeed, it is agreed that it was not owned by London.

---

3. This and other questions in dispute are raised in the Superior Court case brought by Tomke against Kelly, but are not before this Court at this time, in view of the allegations in the Superior Court

case and the general rule that the allegations and not the facts control the duty of an insurer to defend even a groundless suit where the insurer has agreed to do so. 50 A.L.R.2d 458.

Plaintiff herein claims, however, that it was a hired automobile as that term is defined in Condition 3(a) (2):

"Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile."

Whether it was such a hired automobile is the first question presented by this case.

The answer to that question is controlled by American Casualty Company of Reading v. Denmark Foods, 4 Cir., 224 F.2d 461 (1955). The definition of hired automobile in that case was the same as in the instant case. Judge Soper said:

"The words 'hired automobile' were defined to mean 'a land motor vehicle, trailer or semi-trailer used under contract in behalf of or loaned to the named insured', subject to certain provisions not here relevant. In our opinion this endorsement does not bring the Phillips automobile, which was involved in the accident, within the coverage of the policy. The car was not hired by Denmark and was not being used at the time of the accident by an employee of Denmark in its business or in its behalf, but was being used by an employee of Phillips under an independent contract; and hence the hired automobile clause had no bearing on the case. Our conclusion in this respect is in accord with the decisions in Johnson v. Royal Indemn. Co., 5 Cir., 206 F.2d 561; Giroud v. New Jersey Mfrs. Cas. Ins. Co., 106 N.J.L. 238, 148 A. 790; Public Service Mut. Ins. Co. v. White, 4 N.J.Super. 523, 68 A.2d 278; see also, Western Cas. & Surety Co. v. Pacific Emp. Ins. Co., D.C. Okl., 97 F.Supp. 956."

In the present case it is clear from the evidence that Feldman was an independent contractor and not an employee of London. He contracted to perform certain work for London according to his own means and methods, free from control by London of the details connected with the performance of the work. Marine v. Service Trucking Company, 225 Md. 315, 170 A.2d 188 (1961), and cases cited therein. If Feldman were an employee of London, it is agreed that an injury to him would be excluded from the Phoenix policy. Fireman's Fund Ind. Co. v. Mosaic Tile Co., 101 Ga.App. 701, 115 S.E.2d 263 (1960). The essential facts of the present case are the same as in Denmark Foods.

Counsel for Kelly rely on Bituminous Casualty Corp. v. Travelers Insurance Co., D.Minn., 122 F.Supp. 197 (1954), in which the court held that the automobile involved was a hired automobile. The parties in that case who correspond to London and Feldman in the instant case were engaged in a joint venture, and that fact played an important part in the decision on this point. In any event, the Minnesota opinion cannot prevail against the decision of the Fourth Circuit in Denmark Foods, supported by the cases cited by Judge Soper, especially the case from the Fifth Circuit, which includes the State of Georgia, where the Phoenix policy was issued.

Feldman's tractor-trailer was not a "hired automobile" as that term is defined in the Phoenix policy. Phoenix, therefore, owes no obligation to defend or indemnify Kelly in any suit arising out of the injury to Feldman.

There is a second reason why the Phoenix policy does not cover the injury to Feldman—because there had been a breach of the "limitations of use endorsement" before the accident. That endorsement provided:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Prop-

**566**

erty Damage Liability applies subject to the following provisions:

"1. The regular and frequent trips of the automobile do not exceed 50 miles each in length, measured from the point at which the load or any portion thereof is placed on the automobile, to the farthest point to which the automobile transports any part of such load or to which the automobile is operated; and

"2. No regular or frequent trips of greater length are made by the automobile."

 The evidence shows clearly that Feldman made regular and frequent trips with the motor vehicle involved in the accident from Georgia to Baltimore, each trip far exceeding 50 miles in length. Counsel for Kelly argue that the limitations of use endorsement did not apply to the use of each individual automobile but applied to the total or average use of all automobiles covered by the policy. However, Condition 3(d) of the policy makes it clear that the endorsement was intended to apply to separate automobiles. That condition reads as follows:

"Two or More Automobiles. The terms of this policy apply separately to each automobile insured hereunder, but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability."

To the same effect, a later endorsement attached to the policy permitted regular and frequent trips within a 150 mile radius by two specified automobiles.

Counsel for Kelly also argue that the policy is ambiguous, because the printed form contained the following provision in Section IV of the Insuring Agreements: "This policy applies only to accidents which occur during the policy period while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between parts thereof." It is hornbook law, however, that where there is a conflict between the printed provisions of a policy and the provisions of an endorsement, the latter must control. 13 Appleman, Insurance Law and Practice, § 7537, p. 291.

Counsel for Kelly correctly point out that the limitations of use endorsement in this case is a warranty and not a condition. But the evidence shows clearly that there was a breach of that warranty. Wallace v. Virginia Surety Company, Inc., 80 Ga.App. 50, 55 S.E.2d 259 (1949).

Judgment will be entered in favor of the defendant, with costs.