393 P.2d 376

C. Wesley RASMUSSEN, Dennis A. Rasmussen and Ronald W. Rasmussen, Plaintiffs and Respondents,

v.

WESTERN CASUALTY AND SURETY COMPANY, a Kansas corporation, Defendant and Appellant,

Dale Barton et al., Defendants.

No. 9892.

Supreme Court of Utah.

June 17, 1964.

Strong & Hanni, Salt Lake City, for appellant.

Mulliner, Prince & Mangum, John K. Mangum, Salt Lake City, for respondents.

CALLISTER, Justice.

Plaintiffs Rasmussen brought this declaratory judgment action to determine their rights under an automobile casualty policy issued by defendant insurance company. From an adverse decision below, defendant prosecutes this appeal.

The insurance policy in question was issued to C. Wesley Rasmussen, doing business as Rasmussen Heating and Ventilating Company. It was an "audit type" policy and did not specifically include the automobile involved in the accident which gave rise to the present litigation. The automobile was owned by Wesley Rasmussen's son, Ronald. Ronald, having been called upon a church mission, had left his car in the care of his father. The latter permitted other members of the family to use the automobile. Dennis Rasmussen, a younger son, was involved in an accident while driving Ronald's car in Idaho. As a consequence of the accident, suits were filed in Idaho and in Utah against the Rasmussens. Judgment was secured in Idaho against Dennis, but for lack of effective service, not against Wesley. The Utah action is still pending.

Defendant insurance company has refused to defend the Rasmussens, claiming that it has no liability because the vehicle involved in the accident was not covered by the policy issued to Wesley. The lower court, after both parties moved for summary judgment, found in favor of plaintiffs and held that plaintiffs were insured under the policy, and that defendant was obligated to defend them and pay any judgment which has or might be rendered against them. The record, in addition to the pleadings, consists of the insurance policy, audit reports, depositions of Wesley and Ronald Rasmussen, an affidavit of Wesley, and defendant's answers to interrogatories.

The insurance policy under consideration was issued to C. Wesley Rasmussen, as

stated above. Under Coverages A and B of the policy, Wesley Rasmussen, the named insured, is specifically covered if he becomes legally obligated to pay damages. Coverages A—"Bodily Injury Liability"— grants the named insured protection if the injury is "sustained by any person and caused by accident." Coverage A is not limited to any specific vehicle nor operation by any particular person. The sole qualification for coverage is the legal obligation of the named insured to pay damages.

■ Coverage B—"Property Damage Liability—Automobile"—protects the named insured as to damages "caused by accident and arising out of the ownership, maintenance or use of any automobile." The only qualifications of Coverage B, applicable to the instant case, are that the named insured have the use of the automobile involved and be held liable therefor. The complaint in the negligence action pending against plaintiffs alleges such control by C. Wesley Rasmussen as would make his use of the automobile within the purview of Coverage B. If these allegations are ultimately proved, so that his liability is predicated on his use or control of the vehicle, he is protected under this coverage.

The appellant argues that in no event could Wesley be held liable in damages for the accident; this contention evades the question of coverage. The issue before this court does not involve any determination of liability but the protection extended by the insurance contract.

The appellant further contends that since the vehicle itself was not listed in the declaration schedule, this audit type policy did not provide coverage either to Wesley or his son, Dennis. Certain pertinent facts negate this contention.

■ The insurance company did charge a minimum premium to Wesley for hired and nonowned vehicles. If the audit (the appellant selected a payroll type audit) reveals such vehicle usage, additional premiums are due. The appellant places emphasis on the fact that an audit three months after Wesley had taken control of the vehicle did not reveal his usage. This particular audit, however, was for the prior year, and the appellant did in fact learn of the usage of the vehicle during the year in which the coverage is now disputed. By the terms of the policy, the advance premium, according to the declaration, is an estimated premium only, and the company is entitled to collect additional sums to correspond with the earned premiums (the total cost when all risks are revealed.) The remedy of the appellant was to collect any additional premiums to cover the risk and not to deny coverage. The trial court correctly reserved for trial the amount of premium, if any, that may be due defendants from plaintiffs, or any of them.

The language of McPhail v. Pacific Indemnity Co.[1] is particularly appropriate; the court stated:

"  *   *   *   it is contended that, as no premium was paid for hired vehicles, no recovery should be had *   *   *   it clearly appears that the policy provided for a basic or minimum premium and for periodical audits based on the exposure to risk because of the insured's operations, looking to additional premiums. The billing of premiums was appellant's [insurer's] own concern. There is no claim that respondents' books were not open to audit at all times. The hired vehicles were put into commission about nine days before the collision, and it is obvious that after the collision appellant could not very well have charged for premiums on hired cars without thereby admitting that hired cars were covered."

In regard to the provisions of the contract which respondents contend provide coverage for the son, Dennis, there is a relevant discussion in Appleman, Insurance Law and Practice, Vol. 7, Sec. 4354, p. 247:

"In determining whether the plaintiff is an additional insured under a policy it has been held proper to consider the question of premium charge; but the mere fact that no premium was paid for the extended coverage does not in any way interfere with the efficacy of the omnibus clause. Indeed, an additional premium is almost never paid for this coverage, since it is now a standard provision."

A basic dispute of this case is whether Dennis, the son who was operating the vehicle at the time of the accident, is an additional insured under the provisions of the policy. Division III of the Insuring Agreements states:

"The unqualified word 'insured' includes the named insured and also includes   *   *   *   (2) under coverages A and B, and any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission,   *   *   *."

The policy defines a hired automobile in the following term: "an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured   *   *   *."

Wesley's older son, Ronald, was the owner of the vehicle, and it was registered in his name. Furthermore, Ronald had bought the car with his own funds and maintained

1.  79 Cal.App.2d 675, 180 P.2d 735 (1947).

his own liability insurance (which had lapsed prior to the accident). These facts indicate the separate identity of the owner of the vehicle and affirm the use by Wesley as a loan; they are not indicative of a veiled attempt to vest the legal indicia of ownership in the son, while the actual owner was the father, the named insured. There is no indication of a design by the father to own two vehicles in fact and pay premiums on one only by alleging the owner of the other was his son.

Webster's Third International Dictionary, Unabridged, 1961, defines a loan, "something lent for the borrower's temporary use on condition that it or its equivalent be returned."

██ The vehicle was a loan for the temporary use of the father during his son's absence for two years, a definite terminable period; and, therefore, the vehicle qualifies as a "hired automobile" within the terms of the policy.

Under Division III of the Insuring Agreements, Dennis qualified as an insured under Coverages A and B because he was a person using a hired automobile and he was legally responsible for the use thereof, and his compliance is undisputed with the provision that the actual use was with the permission of the named insured, his father.

The judgment of the trial court is affirmed. Costs to plaintiffs.

McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, Chief Justice (concurring in part and dissenting in part).

Wesley and his boy brought the instant litigation, asking for a declaration that the policy: 1) required defendant to defend the action, and 2) that defendant was liable for past and future judgments obtained against Wesley *or* Dennis, urging that both were covered.

The lower court adjudged that defendant was a) obligated to defend the action and b) was liable for any resulting judgment up to the policy limit. This writer believes the trial court's judgment with respect to the duty to defend is correct as reflected in the language of the policy itself, and that defendant had and has the onus of defending the suits brought against Wesley, except the action in Idaho, where the court obtained no jurisdiction over him. The following language in the policy, which usually is the "clincher" after the "pitch" to the effect that the insurance company would "defend any suit against the insured alleging such injury * * * and seeking damages on account thereof, *even if such suit is groundless, false or fraudulent*" seems significant and clear.

As to b): I think that during the pendency of a suit for personal injuries where

the insurance company has denied liability for injury but it has agreed and it has been adjudged that at least it must defend its assured under the terms of the policy, the question of ultimate liability should either be developed in the case below or in a proceeding subsequent to the trial thereof. . Otherwise, in every. instance where the insurance carrier is obligated to defend its assured, this court could be called upon, during the pendency of the action, to interpret insurance policies, the answer to which very well might be found in an orderly proceeding at the trial level. This may not be a tight conclusion or rule, and it is not urged that there cannot be a case where the procedure pursued here might not be entertained. But here is a case where both sides have written scholarly briefs, both of which point out provisions of the policy that could be interpreted with good logic and reason by one or another of us to support either side.

Should we determine at this juncture, in this particular case, the question of the insurer's liability or nonliability, based on but two affidavits, not subjected to cross-examination, it would seem that prematurely we immunize one side or the other against a plenary and fair hearing or trial, because of simple res judicata principles.

WADE, J., concurs in the views expressed in the opinion of HENRIOD, C. J.