## RICHARD A. FISHER ET AL. *v.* MAXWELL C. TYLER ET AL.

[No. 181, September Term, 1977.]

*Decided February 9, 1978.*

The cause was argued before MORTON, MASON and WILNER, JJ.

*Albert D. Brault* and *David A. Levin,* with whom were *Brault, Graham, Scott & Brault* and *O'Malley, Miles, Farrington & McCarthy* on the brief, for appellants.

*D. William Simpson,* with whom were *John W. T. Webb* and *Webb, Burnett & Simpson* on the brief, for appellees Maxwell C. Tyler and the Hardester Corporation. *Samuel S. Smalkin* for other appellee.

MASON, J., delivered the opinion of the Court.

This is an appeal by appellants, Richard A. Fisher, Fisher Trucking Corporation and Russell Allen Taylor, from a declaratory judgment proceeding brought in the Circuit Court for Dorchester County against appellees, Maxwell C. Tyler, Hardester Corporation and Northland Insurance Company, to determine their rights under an automobile liability insurance policy. The genesis of the present litigation stems from an accident that occurred on January 26, 1973. The basic facts, as summarized in appellees' brief, are not in dispute:

> In the afternoon of January 25, 1973, appellant, Richard A. Fisher, President of Fisher Trucking Corporation, received a telephone call from a dispatcher at the bark plant division of Perdue, Inc., in Salisbury, Maryland. The dispatcher asked Fisher whether he had a tractor "available to pull their (Perdue) trailer to Webster, New York" from the Salisbury bark plant. The quoted fee for hiring the tractor was a set, flat fee and Fisher did not receive a smaller fee for hauling a Perdue trailer than he would have received for hauling a Fisher trailer. Fisher agreed to the proposed terms and sent Russell Allen Taylor, a Fisher employee, to the Salisbury bark plant with a Fisher tractor. Taylor picked up a Perdue trailer, already loaded with bark, and was on his way to Webster, New York when [the tractor owned by Fisher Trucking Corporation and the attached trailer owned by Perdue were involved in a multi-car accident resulting in multiple personal injuries and property damage.]

At the time of the accident Northland Insurance Company (Northland) carried a policy of liability insurance on the Fisher Trucking Corporation (Fisher), but disclaimed coverage of insurance for claims arising out of the accident because of the following exclusion in the policy:

> This policy does not apply:
> * * *
> (e) Under coverages A [Bodily Injury Liability] and B [Property Damage Liability] while the auto-

mobile is used for the towing of any trailer, vehicle or machine unless such trailer, vehicle or machine is covered by like insurance in the company; or while any trailer, vehicle or machine covered by this policy is used with any automobile not covered by like insurance in the company.[1]

Under this exclusion, it is clear that Northland was relieved of liability while the insured Fisher tractor was towing the Perdue trailer, which was not insured by Northland.

At trial below, and in this Court, appellants' cause of action is based solely on the narrow and limited theory that appellees were negligent, or in the alternative, breached a contract, in failing to attach a "hired car" endorsement to the policy of insurance issued by Northland, and that if such an endorsement had been attached, it would have provided coverage to appellants for the accident.

Consistent with this theory, counsel for appellants, in his opening statement to the jury, said:

We have brought this suit against the Hardester Corporation, Northland Insurance Company and Mr. Tyler on the theory that they were negligent in failing to provide the hired car endorsement which the basic price of which for the premium, I think, was $24.00.

\* \* \*

We are only concerned with the absence of this little hired car endorsement for $24.00 which Mr. Tyler, we claim, and which the evidence will show, is the practice of any knowledgeable insurance agent who

---

1. "In most standard form policies now in existence there is a specific exclusion of coverage while any insured automobile is used with an uninsured trailer, or while an insured trailer is used with an uninsured automobile. Such provisions are valid and enforceable because of the added hazard created by the towing of the trailer, and a breach of the policy would prevent recovery. The purpose of such provisions is self-evident, namely, to prevent liability of the insurer while an insured vehicle was used for towing a trailer not insured with the company." Appleman, Insurance Law and Practice, Vol. 7, Sec. 4438, at 457, 458.

is dealing with a trucker where split units are involved, where you have units that are capable of separation and particularly tractors, of course, capable of attachment to anybody else's trailer.

Additionally, appellants offered two witnesses who testified, in essence, that it was the prevailing standard and practice for an insurance agent writing automobile liability insurance on a business such as Fisher Trucking Corporation, to include a "hired car" endorsement in the policy to protect the insured when his tractor pulled someone else's trailer.

In granting appellees' motion for a directed verdict at the conclusion of appellant's case, the trial court ruled, as a matter of law, that the Northland policy would not have provided coverage to appellants for the accident even if the "hired car" endorsement had been attached. In view of the posture of the case as framed by the proceedings below, we need not decide whether appellees were negligent or breached the contract in failing to provide appellant with insurance that would have provided coverage for the accident. Rather, we are limited in our review to the question of whether, as a matter of law, the Northland policy with a "hired car" endorsement would have provided coverage for the accident.[2]

In determining whether the "hired car" endorsement would have extended coverage to appellants, the pivotal question is whether the Perdue trailer was a "hired automobile" as defined in the following endorsement:

## "HIRED AUTOMOBILE"

It is agreed that such insurance as is afforded by the policy . . . applies with respect to hired automobiles, subject to the following provisions:

1. APPLICATION OF INSURANCE: The in-

---

2. This case is before us for a second time. In Fisher v. Tyler, 24 Md. App. 663 (1975), we determined that this was a declaratory judgment suit which could be maintained at law and that a transfer of the case to the equity court was error. In that opinion the Court discussed the general legal theory underlying this suit. 24 Md. App. at 669-70. We note that the character of the action has changed since that opinion in that the question is no longer whether appellees breached a duty to provide insurance coverage for the accident in question; but is now whether appellees breached a duty to include a specific insurance clause in the policy.

surance applies to the maintenance or use, for the purposes stated in the schedule forming a part hereof of any hired automobile.

\* \* \*

6. DEFINITIONS: "Hired Automobile" means a land motor vehicle, trailer or semi-trailer used under contract in behalf of, or loaned to, the name insured. . .

Appellees argue that this hired automobile endorsement would not have provided coverage to appellants for the accident. They rely on the case of *Pennsylvania Thresherman and Farmer's Mutual Casualty Ins. Co. v. Hartford Accident and Indemnity Co.,* 310 F. 2d 618 (4th Cir. 1962) which is factually parallel to the present case. In that case Drake owned a tractor which was insured by Pennsylvania Thresherman. Under an agreement for a flat sum per mile, Drake furnished Carolina Tank Corporation a tractor and driver to haul a Carolina trailer containing a cargo of gasoline tanks. The tractor-trailer was involved in an accident resulting in personal injuries and property damage. Pennsylvania Thresherman contended that it was free from liability under its policy by reason of the following exclusion:

This policy does not apply . . . (c) under coverage A & B while the automobile is used for towing of any trailer *owned or hired* by the insured and not covered by like insurance in the company . . . . (Emphasis supplied).

Pennsylvania Thresherman, which stood in the same insuring posture as Northland in the present case, argued that the trailer at the time of the accident was "hired" by Drake and was, therefore, excluded from coverage under the policy. The Fourth Circuit found no substance to this argument.

Drake paid no rental or other compensation for the use of the trailer. On the contrary, as we have seen, he exacted a higher price for the use of his tractor than he ordinarily charged for his complete

tractor-trailer outfit. There was no hiring on Drake's part. The contract merely provided that Drake, for an agreed price, would furnish his tractor and a driver to haul Carolina's loaded trailer . . . and return the trailer to its owner. *Id.* at 620-21 (Citation omitted).

On this authority, it is clear the Perdue trailer was not "hired" by Fisher.

Appellants, however, contend that *Pennsylvania Thresherman* is not dispositive because in that case the term "hired" was not defined in the policy; whereas the Northland endorsement defined "hired automobile" as one "used under contract in behalf of, or loaned to, the named insured." Thus appellants argue the inclusion of the "loaned" provision in the definition of hired automobile makes the result in *Pennsylvania Thresherman* inapposite in the present case.

It is obvious that the definition of "hired automobile" is broader in the Northland policy than that in the Pennsylvania Thresherman policy. The question, therefore, is whether the Perdue trailer comes within the purview of the broader definition, i.e., whether the Perdue trailer was loaned to Fisher.

In interpreting insurance contracts words are to be given their customary and normal meaning. *See e.g. State Farm Mutual Auto Ins. Co. v. Treas.,* 254 Md. 615, 619 (1969). Consistent with this principle, court interpretations of the hired automobile clause now under examination have looked to the commonly understood meaning of the term "loan". *Trinity Universal Ins. Co. v. Cincinnati Ins. Co.,* 513 F. 2d 915, 920 (6th Cir. 1975); *Rasmussen v. Western Casualty and Surety Co.,* 15 Utah 2d 333, 393 P. 2d 376, 378 (1964). Webster's Third New International Dictionary (Unabridged ed. 1971) defines "loan" as "1. . . . b: something lent for the borrower's temporary use on condition that it or its equivalent be returned." Of like import see The American Heritage Dictionary of the English Language (1973); The Random House Dictionary of the English Language (Unabridged ed. 1966). See also Black's Law Dictionary which

defines "loan for use" as: "Occurs where a chattel is to be used by bailee without reward and then specifically returned to bailor."

Of importance in the above definitions is that the item is lent for the borrower's use. Thus, if a person obtains the temporary use of his neighbor's lawn mower, without monetary pay or its equivalent, to mow his own lawn, we say that the mower was loaned to him. *See Boyington v. American Liberty Ins. Co.,* 284 Ala. 581, 226 So. 2d 640, 643 (1969). However, if a person receives money to use his neighbor's mower to cut his neighbor's lawn, we do not say the mower was loaned to him. The mere grant of custody and exercise of control over the mower does not create the relationship of lender and borrower. *Indemnity Ins. Co. of North America v. Pacific Clay Products Co.,* 13 Cal. App. 3d 304, 91 Cal. Rptr. 452, 458-59 (1970).

Similarly, we do not find that the custody and control exercised by Fisher over the Perdue trailer amount to a loan. If Perdue had supplied both the tractor and trailer and had simply arranged for Fisher Trucking Corporation to supply the driver, one would not customarily and normally characterize Fisher's use of the tractor-trailer as a loan. Nor would one call Fisher's custody of Perdue property a loan, if Perdue had simply arranged to have Fisher haul Perdue goods in a Fisher tractor-trailer. The control exercised by Fisher over the Perdue trailer in the present case is no different in character than that in the above mentioned situations. We are thus led to conclude that the trailer was not loaned to Fisher.

The cases relied upon by appellant in which courts found that the vehicle was loaned to the insured are unpersuasive. In *Rasmussen v. Western Casualty and Surety Co., supra,* 393 P. 2d at 378, a son left a car for his father to use while he was away on a church mission. The Court found that the car was "loaned to" the father. This case is consistent with the above noted definition of a loan. The father had complete custody and control of the car, unlike Fisher who had custody alone of the trailer but was limited as to what it would do with the trailer. The case of *Michigan Mutual Liability Co. v.*

*Hoover Bros., Inc.*, 96 Ill. App. 238, 237 N.E.2d 754, 758 (1968) is not helpful to appellants because the court simply concluded that the truck involved in the accident was "borrowed", without going into the facts behind the arrangement.

The final case relied upon by appellants is *Miller v. National Farmers Union Property and Cas. Co.*, 470 F. 2d 700 (8th Cir. 1972). In *Miller* two companies were both engaged in the bulk milk hauling business.

> [I]t was the custom of the two companies to interchange vehicles on a temporary basis whenever a truck of one or the other was disabled. This was merely an informal oral agreement with the only apparent obligation being for each party to reciprocate if the need arose.

*Id.* at 702. The insurance policy of the user of the truck, not the owner, covered losses incurred while a vehicle was "used under contract in behalf of, or loaned to. . ." the insured. Of importance to appellants' argument, the Court noted that the reciprocal borrowing agreement would bring the truck within the provision of being "loaned to" the insured. *Id.* at 705. In *Miller* the borrower used the truck for his own purpose, not that of the lender; thus, distinguishing the interchange program in that case from the present case.

Because we have concluded that the Perdue trailer was not loaned to Fisher, coverage for the accident in question would not have been provided even if the "hired automobile" endorsement had been included in the Northland policy.

*Judgment affirmed.*
*Costs to be paid by appellants.*