RICHARD A. FISHER ET AL. *v.* MAXWELL
C. TYLER ET AL.

[No. 13, September Term, 1978.]

*Decided December 4, 1978.*

*Albert D. Brault,* with whom were *Brault, Graham, Scott & Brault* on the brief, and *David A. Levin,* with whom were *O'Malley, Miles, Farrington & McCarthy* on the brief, for appellants.

*D. William Simpson,* with whom were *John W. T. Webb* and *Webb, Burnett & Simpson* on the brief, for appellees Maxwell C. Tyler and The Hardester Corporation. *Samuel S. Smalkin* for appellee Northland Insurance Company.

DIGGES, J., delivered the opinion of the Court.

Petitioners Richard A. Fisher, Fisher Trucking Corporation, and Russell Allen Taylor instituted this

declaratory judgment action against respondents Maxwell C. Tyler, Hardester Corporation, and Northland Insurance Company, seeking an adjudication of the rights and obligations of the parties under an automobile liability policy issued to Fisher Trucking by Northland. At the close of petitioners' case, which was tried before a jury in the Circuit Court for Dorchester County, Judge Charles E. Edmonson, after directing a verdict for respondents, entered a declaratory judgment in their favor and that decision was affirmed by the Court of Special Appeals in *Fisher v. Tyler,* 38 Md. App. 616, 382 A. 2d 338 (1978). We granted certiorari to review the propriety of these rulings. Since we are in agreement with the result reached by each of these courts, we shall affirm.

The events that precipitated this suit occurred on the twenty-fifth and twenty-sixth of January 1973. Capsulized, they show that on the afternoon of the twenty-fifth Richard A. Fisher, president and principal stockholder of Fisher Trucking Corporation, received a telephone call at his office in Pocomoke City, Maryland, from the dispatcher at the bark plant division of Perdue, Inc., which is located near Salisbury, Maryland. The dispatcher inquired of Fisher whether he had a tractor "available to pull [Perdue's] trailer [loaded with bark] to Webster, New York," from the Salisbury plant. Fisher, for a stated fee, agreed to provide the requested service and accordingly sent Russell Allen Taylor, a Fisher employee, to the Salisbury plant with a tractor. Upon arrival Taylor hitched his tractor to the Perdue trailer, which had already been loaded with bark, and was proceeding to Webster, New York, when, in the early morning hours of January 26th, he was involved in a multi-car accident on the Capital Beltway that resulted in one fatality and several serious injuries.

At the time of the accident, Northland Insurance Company carried a liability insurance policy on the Fisher Trucking Corporation vehicles. Under the general terms of the policy, Fisher Trucking was insured against both bodily injury and property damage liability resulting from accidents such as occurred here. Northland, however, disclaimed responsibility

under the policy for the Beltway accident on the basis of the following provision found in the insurance contract:

## EXCLUSIONS

This policy does not apply:

\* \* \*

(e) under coverages A and B [(bodily injury and property damage liability)], while the automobile is used for the towing of any trailer, vehicle or machine unless such trailer, vehicle or machine is covered by like insurance in the [Northland] company . . . .

Since the Fisher tractor was towing a Perdue trailer that was not insured by the company at the time of the accident, petitioners concede that the Northland policy, as it was actually written, did not provide them protection.

At the trial in the circuit court, petitioners' cause of action was predicated solely on the narrow and limited theory that Maxwell C. Tyler as insurance agent, Hardester Corporation as insurance broker, and Northland Insurance Company as the underwriter, were all negligent or, in the alternative, breached their contractual obligation to petitioners by failing to attach a "hired automobile endorsement" to the policy of insurance issued to Fisher Trucking by Northland through the insurance broker and its agent. This endorsement, had it been attached to the Fisher Trucking insurance policy, as it often is to other similar policies, would have provided in relevant part:

## HIRED AUTOMOBILES

\* \* \*

1. Application of Insurance. The insurance applies to the maintenance or use ... of any hired automobile. . . .

\* \* \*

6. Definitions. "Hired automobile" means a land motor vehicle, trailer or semitrailer used under

contract in behalf of, or loaned to, the named insured . . . .

Petitioners' claim is that their policy with Northland, had it included this hired automobile endorsement, would have provided them insurance coverage for the Capital Beltway accident.

The record reflects that at the close of petitioners' case, the trial court granted a motion made by respondents that a declaratory judgment be entered in their favor on the ground that, as a matter of law, the Northland policy, even with the hired automobile endorsement attached, would not have provided coverage to petitioners for the accident. It being axiomatic that such a ruling is proper only if "it is manifest to the court that, on the plaintiff's own showing and the uncontradicted evidence in the case, there is no rational ground on which a verdict for the plaintiff can be based . . . ," *Barnes v. Housing Authority,* 231 Md. 147, 152, 189 A. 2d 100, 102 (1963), it becomes our task to determine whether on this evidence there is any reasonable basis for concluding that the Perdue trailer was a "hired automobile" within the meaning of the endorsement.

In determining that the hired automobile endorsement, even if attached, would not have provided coverage to the petitioners, the trial court relied primarily on the decision of the United States Court of Appeals for the Fourth Circuit in *Pennsylvania Threshermen & F. Mut. Cas. Ins. Co. v. Hartford Acc. & I. Co.,* 310 F. 2d 618 (4th Cir. 1962), a case in which the hauling arrangement between the owners of the tractor and the trailer was quite similar to that present here. In *Pennsylvania Threshermen,* Tommie Drake, the owner of a tractor-trailer unit, agreed for a flat sum per mile to furnish to the Carolina Tank Corporation only his tractor and a driver to haul a Carolina trailer containing a cargo of gasoline tanks. The Drake tractor-Carolina trailer unit was involved in an accident and suit was instituted to determine the respective liabilities of the individual insurers of the tractor and the Carolina trailer. The Pennsylvania Threshermen policy, although otherwise insuring the tractor, excluded coverage

when that vehicle was pulling a trailer " 'owned or hired by the insured and not covered by like insurance in the company.' " 310 F. 2d at 620. In seeking to avoid liability, Pennsylvania Threshermen, which stood in the same insuring posture as Northland does in the present case, argued that the trailer at the time of the accident was "hired" by Drake and, therefore, the exclusion was applicable. In holding that Pennsylvania Threshermen was not relieved of its indemnity responsibility resulting from the accident because Drake did not "hire" the trailer, Judge Soper, speaking for the court, stated:

> The mutual benefits flowing to the parties from this arrangement, it is said, caused the trailer to be a hired vehicle in Drake's hands. We find no substance in this argument. Drake paid no rental or other compensation for the use of the trailer.... There was no hiring on Drake's part.... The contract merely provided that Drake, for an agreed price, would furnish his tractor and a driver to haul Carolina's loaded trailer ..., and return the trailer to its owner. [*Id.* at 620-21 (citation omitted).]

Despite the factual similarities to which we just alluded, petitioners nonetheless contend, and we agree, that *Pennsylvania Threshermen* is not dispositive of this case for there are important lexical differences between the policy that was before the Fourth Circuit and that involved here. The specific distinguishing feature supporting this conclusion is the fact that the term "hired" was not further defined in the contract of insurance involved in *Pennsylvania Threshermen* while the term "hired automobile" is specifically defined in the Northland policy. The term "hired," not being otherwise defined within the policy in *Pennsylvania Threshermen,* conveyed the normal meaning of that word. *E.g., Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 329, 301 A. 2d 12, 18 (1973) (citing cases). In that context, a "hired" automobile is one whose temporary use has been engaged for a fixed sum. *See Webster's Third New International Dictionary* 1072 (unabr. ed. 1976); 12 G. Couch, *Cyclopedia of Insurance Law*

§ 45:263, at 289 (2d ed. 1964). On the other hand, the Northland policy spells out a more expansive interpretation of that term for it includes within its definition the phrase "used under contract in behalf of, or loaned to," thereby giving the word "hired" a broader and somewhat different meaning. Further, we observe that if there had been no intention to alter the ordinary import of the term, there would have been no reason to specifically define it. *See Bituminous Cas. Corp. v. Travelers Ins. Co.,* 122 F. Supp. 197, 202 (D. Minn. 1954). Therefore, we are required to examine the facts of this case in light of this broader definition to decide whether the hired car endorsement, if attached to Fisher Trucking's policy, would have provided petitioners with insurance coverage.

Our consideration of this issue begins with that portion of the endorsement's "hired automobile" definition that provides coverage for vehicles "used under contract in behalf of" the insured. The import of this language has been considered by this Court on only one other occasion, *Consol. Ins. Co. v. Bankers Ins. Co.,* 244 Md. 392, 398, 223 A. 2d 594, 597-98 (1966), but in a situation that renders that decision not controlling here; however, the application of this policy provision in a factual posture similar to that presented here has been before the courts of our sister states. The decisions of these jurisdictions have special significance in this context because heretofore this Court has recognized that "like a state which adopts, by copying, a foreign statute, . . . parties who adopt an insurance policy, which apparently has had nationwide use and has been judicially construed in five or six states, adopt with it the uniform judicial construction that it has received in other states." *Stanley v. Amer. Motorist Ins. Co.,* 195 Md. 180, 188, 73 A. 2d 1, 4 (1949) (citations omitted). In other words, while the contract term on its face may be ambiguous, which under other circumstances would ordinarily generate a jury question, *e.g., Peoples Life Ins. Co. v. Jerrell,* 271 Md. 536, 542, 318 A. 2d 519, 523 (1974) (citing cases), the court in this situation may treat the term as unambiguous and, absent any factual dispute, adopt, as a matter of law, that construction placed on the language by

the courts of other states. *See Winterwerp v. Allstate Ins. Co.,* 277 Md. 714, 717, 357 A. 2d 350, 352-53 (1976).

The several courts that have been faced with the task of construing the phrase "used under contract in behalf of" have held that the term "contract," in this context refers only to agreements to hire another's vehicle based on a monetary payment or some other consideration, as opposed to a gratuitous benefit, flowing to the owner of the hired vehicle. *See Miller v. National Farmers Union Property & Cas. Co.,* 470 F. 2d 700, 705 (8th Cir. 1972); *Farmers Mutual Ins. Co. v. United Pacific Ins. Co.,* 206 Or. 298, 292 P. 2d 492, 495 (1956); 12 G. Couch, *supra,* § 45:265, at 290; *cf. Consol. Ins. Co. v. Bankers Ins. Co., supra,* 244 Md. at 398, 223 A. 2d at 597-98. On the other hand, "in behalf of" refers to the individual who receives the direct benefit of the vehicle's use in that he requires the vehicle to perform his primary contractual obligation. Thus, to demonstrate that a vehicle was used "in behalf of" the insured, it must be shown that by its use he was the recipient of a benefit different from that he would receive as a party to the primary contract. This is more clearly illustrated when there is an independent contractor involved; if the vehicle is being used by an independent contractor engaged by the insured, courts have held that it is not a "hired automobile" because the vehicle is being used "in behalf of" the independent contractor and not the insured, even though it was used in furtherance of the primary contract between the insured and the contractor. *See American Casualty Co. of Reading v. Denmark Foods,* 224 F. 2d 461, 463 (4th Cir. 1955); *Johnson v. Royal Indemnity Co.,* 206 F. 2d 561, 562-64 (5th Cir. 1953); *Kelly v. Phoenix Assurance Company of New York,* 225 F. Supp. 562, 565 (D. Md. 1964). *But see Fratis v. Fireman's Fund American Insurance Companies,* 56 Cal. App. 3d 339, 128 Cal. Rptr. 391, 393-95 (1976). In light of these definitions of "contract" and "in behalf of," it would appear that a vehicle is "used under contract in behalf of" the named insured when the insured *hires* the vehicle, *i.e.,* pays some form of compensation to the vehicle's owner for its use by the insured in fulfilling his obligation under the primary contract.

Petitioners nonetheless contend in regard to this portion of the endorsement definition that because either a mutual benefit bailment or a gratuitous bailment arises under the transaction between Fisher Trucking and Perdue, the trailer was "used under contract in behalf of" Fisher Trucking and, therefore, coverage would be provided under the policy if the hired car endorsement had been attached. While there is considerable uncertainty among the authorities as to whether a gratuitous bailment, being unsupported by consideration, is truly a contract, *compare* 1 A. Corbin, *Contracts* § 121, at 520-23 (1963) *with* R. Brown, *The Law of Personal Property* § 10.1, at 210-11 (3d ed. 1975) *and* 9 S. Williston, *The Law of Contracts* § 1039, at 907-08 (3d ed. 1967), and thus even relevant in this situation, it is quite clear that a mutual benefit bailment is a contract. 9 S. Williston, *supra,* § 1040, at 910. Even if the agreement between Fisher Trucking and Perdue was determined to be a mutual benefit bailment, this would still not aid petitioners for the fact that benefits flowed to both parties sufficient to constitute consideration for a contract does not necessarily make that contract into one of "hiring" within the purview of the "hired automobile" endorsement. The only class of mutual benefit bailment that could be said to have arisen on the facts of this case is one in which the bailor (Perdue) employed the bailee (Fisher Trucking) to transport its trailer filled with bark. *See id.* § 1040, at 912.[1] As such, in order for the petitioners to show this was a contract "in behalf of" Fisher Trucking would

---

1. The other classes of mutual benefit bailments listed by Williston are:

   1) Where bailee hires the use of the property.
   2) Where the bailor employs the bailee to do some work upon the property.
   3) Where the bailor hires the bailee to store the property.
   4) Where the property is bailed as a pledge or security for a debt or other obligation.

   * * *

   6) Where the bailee is to act as factor or agent for the bailor in the sale of the property.
   7) Where the custody or use of the property is incidental to some other business transaction between the parties. [9 S. Williston, *The Law of Contracts* § 1040, at 912-13 (3d ed. 1967) (footnotes omitted).]

require that they produce some evidence of the passing of some monetary consideration or other nongratuitous benefit from the bailee to the bailor for the use of the trailer.

The relevant portions of the evidence adduced at trial, when viewed in a light most favorable to petitioners as it must be in considering the propriety of the trial court's action entering a declaration in respondents' favor, *Hensel v. Beckward,* 273 Md. 426, 427-28, 330 A. 2d 196, 197 (1974), do not support the conclusion that any consideration or other nongratuitous benefit passed from Fisher Trucking to Perdue. The only evidence before the trial court concerning the nature of the transaction between Fisher Trucking and Perdue was provided by the testimony of the trucking company's president. On direct examination he testified:

Q. Mr. Fisher, I want to come down to the accident, very briefly .... How did this trip, this particular trip on which the accident occurred originate? In other words, who contacted you and when and so forth?

A. They called me on the 25th, about four o'clock, and asked me if I had — Perdue called me — *if I had a tractor available to pull their trailer* to Webster, New York. I told them I did.

\* \* \*

Q. And the trailer that was being pulled was a Perdue owned trailer, is that right?

A. Yes.

Q. Already loaded with bark or whatever?

A. Yes.

On cross examination the nature of the transaction was further clarified:

Q. They [Perdue] wanted to hire your tractor and driver, is that correct?

A. That's correct.

Q. *They were the ones that were hiring your tractor,* is that right?

A. Yes.

* * *

Q. How was the rate established . . . ?

A. They called me and asked me if I would *pull their trailer* and told me the dollar figure. [(Emphasis added.)]

There can be no doubt that this testimony is describing a commercial transaction in which Perdue paid consideration to Fisher Trucking for the use of its tractor and driver to haul a trailer full of bark, and not vice versa. Thus, though a mutual benefit bailment contract may have arisen between the parties, the evidence does not support the inference that the Perdue trailer was "used under contract in behalf of" Fisher Trucking.

We now turn our attention to that portion of the endorsement's hired automobile definition on which the petitioners chiefly relied — " 'Hired automobile' means a . . . trailer . . . loaned to" the named insured. In considering the issue of whether the Perdue trailer was "loaned to" Fisher Trucking so as to provide it with coverage for the accident, we initially recall the well-established rule of construction that "in interpreting insurance contracts, words are to be given their customary and normal meaning." *Gov't Employees Insur. v. DeJames,* 256 Md. 717, 720, 261 A. 2d 747, 749 (1970). We find it impossible, based on the testimony of Mr. Fisher quoted earlier, for the Fisher Trucking-Perdue transaction to be included within any meaningful concept of the word "loan." The commonly understood meaning of that word, in the context with which we are now concerned, is that relied on by the Court of Special Appeals in its opinion:

(1) . . . b: something lent for the borrower's temporary use on condition that it or its equivalent be returned. [*Fisher v. Tyler,* 38 Md. App. 616, 621, 382 A. 2d 338, 342 (1978) (quoting *Webster's Third New International Dictionary* 1326 (unabr. ed. 1971)).]

*See Black's Law Dictionary* 1086 (4th ed. 1968) ("loan for use" is the gratuitous grant of an article to another for use).

The arrangement that Mr. Fisher described in his testimony was a commercial transaction in which Perdue paid consideration to Fisher Trucking for the use of its tractor and driver. Fisher Trucking did not borrow the trailer any more than, as we have already explained, it used the trailer "under contract in behalf of" itself. A different result may well have been mandated if, instead of having contracted to transport a trailer loaded with bark to New York, Fisher Trucking only had agreed to supply the necessary equipment to take the bark but, as it developed, found it could not fulfill that contract without obtaining, gratuitously or otherwise, the use of Perdue's trailer. Then, even though Perdue as the lender would receive an indirect benefit from the transaction, it would be a "loan" within the endorsement.[2] *See Boyington v. American Liberty Insurance Co.,* 284 Ala. 581, 226 So. 2d 640, 641-43 (1969) (truck owner hired to haul wood but truck was not equipped for such a load; owner of wood "loaned" trailer to truck operator to perform the job). For us to say that, under the facts of the present case, the delivery of the bark-filled trailer to a bailee so that he may perform services contracted for with respect to it, is a "loan" within the definition of the endorsement would attach an uncommon and unprecedented meaning to that word.

In urging that we reach a contrary conclusion, the petitioners principally rely on three cases they contend are convincing authority for the proposition that the trailer involved here was "loaned" to Fisher Trucking. *Miller v. National Farmers Union Property & Cas. Co.,* 470 F. 2d 700, 702, 705 (8th Cir. 1972) (customary interchange of trucks by milk haulers was reciprocal borrowing agreement, showing trucks "loaned to" insured); *Michigan Mutual Liability Co. v. Hoover Bros., Inc.,* 96 Ill. App. 2d 238, 237 N.E.2d 754, 756, 758 (1968) (partnership's borrowing extra truck from corporation also owned by partners did not allow insurer to

---

2. We further think it obvious that there would be a "loan to" Fisher if, in a situation like that hypothesized above, he obtained the trailer from a third party rather than Perdue.

avoid liability under endorsement defining hired automobile as one "used under contract in behalf of, or loaned to, the named insured"); *Rasmussen v. Western Casualty and Surety Co.,* 15 Utah 2d 333, 393 P. 2d 376, 378 (1964) (son's car "loaned" to father when son, while away on church mission, left automobile for father's use). We conclude, however, that a reading of these cases demonstrates such reliance is misplaced. None of them concerned a commercial transaction between the lender and the borrower, but rather, each involved a factual situation in which a vehicle was gratuitously loaned by one party to another.[3] Thus, these decisions do not provide us with a persuasive basis for holding that the Fisher-Perdue transaction, which the evidence shows was not in any way gratuitous, was a loan.

Since, even if the hired automobile endorsement had been attached to the insurance policy, there still would exist no rational basis, under the evidence here, to support an inference that the Perdue trailer was "loaned to" petitioners or that the trailer was "used under contract in behalf of" them, we hold that the trial court was not in error in entering a declaratory judgment in favor of the respondents.

> *Judgment of the Court of Special Appeals affirmed.*
> *Costs to be paid by the petitioners.*

---

**3.** In Miller v. National Farmers Union Property & Cas. Co., 470 F. 2d 700 (8th Cir. 1972), it could possibly be urged that the loan was not gratuitous, but was pursuant to a binding contractual obligation between the parties through a preexisting interchange agreement. During oral argument, the petitioners asserted that there was such an "interchange" agreement between Perdue and Fisher here, and, consequently, the trailer was either "loaned to" Fisher, as in *Miller,* or was used pursuant to a contract between Fisher and Perdue. The record, however, refutes this contention as is demonstrated by the following testimony of Fisher Trucking's president:

Q. You testified concerning this arrangement you had with Perdue down at Accomac where you hauled their trailers and they hauled your trailers. This haul the night this accident happened didn't have anything to do with that arrangement, did it?
MR. FISHER: No.