Delois HOLMES, Personal Representative of the Estate of Marie Washington, et al., Appellants,

v.

The BRETHREN MUTUAL INSURANCE COMPANY, Appellee.

No. 03–CV–1304.

District of Columbia Court of Appeals.

Argued Jan. 6, 2005.

Decided Feb. 17, 2005.

Jeremy Flachs, Annandale, VA, with whom D. Michael Mullori was on the brief, for appellants.

Kathleen M. McDonald for appellee.

Before TERRY, FARRELL, and REID, Associate Judges.

FARRELL, Associate Judge:

This appeal from a grant of summary judgment to appellee Brethren Mutual Insurance Company (Brethren) asks us to decide whether an insurance policy provision extending coverage to "hired autos" applies to the motor vehicle at issue in this case. The parties agree that the question is one of Maryland law. We conclude, as did the trial judge, that the vehicle was not a hired auto within the meaning of the policy, because to meet that definition Maryland would require the exercise of control over the vehicle by the named insured that is absent in this case. We therefore affirm.[1]

## I.

Ronald Harris owned an unincorporated District of Columbia-based business known as Harris Transportation, which regularly transported players to bingo parlors such as Bingo World, located in Maryland and owned by Arundel Amusements, Inc. Earl Johnson was a driver for Harris; he was paid in cash for each night's work. The parties agree that Harris' relationship to Bingo World was that of an independent contractor. By oral agreement of the parties, Bingo World paid Harris fifteen dollars per person for each bingo player he brought to Bingo World. The trial judge's description of the relationship is undisputed:

> Arundel [Bingo World] did not know, on any given day, whether or not Harris, or his driver, would appear with customers, or how many customers would be in the van when Harris' van did appear. Arundel exercised no control over what vehicle Harris chose to use, when he would use it, how he would use it and maintain it, what routes he would take, who his drivers would be, and whether he picked up customers or not.

On the night of July 23, 1998, Johnson was transporting Marie Washington and others home from Bingo World when the van was struck broadside by another vehicle driven by Delonta St. John in the District of Columbia. Washington ultimately died from injuries received in the accident. Appellant Delois Holmes, the personal representative of her estate, subsequently was awarded damages following a personal injury suit against Harris, Johnson, and St. John, but a sizeable portion of the award remained unpaid because of limitations in the insurance coverage of those defendants. At the time of the accident, Bingo World was insured under a commercial policy underwritten and issued by appellee Brethren, a company licensed to write insurance in Maryland. Holmes and others therefore filed the present complaint in Superior Court for a declaratory judgment, asking the court to "determine insurance coverage and the rights, duties, and obligations of Brethren under the terms and conditions of [its] Policy [with

---

1. After oral argument, we considered whether to certify the issue to the Court of Appeals of Maryland, *see* MD. CTS. & JUD. PROC. ART. §§ 12–601 to 609, but have concluded that that course is unnecessary.

Bingo World]," specifically whether the "hired autos" provision of the policy extended coverage to the van operated by Harris' driver. From the trial court's adverse answer to that question, Holmes noted this appeal.

## II.

■ "Hired auto" provisions appear in many commercial insurance policies. Some define the term "hired auto" expressly, often as an automobile (or similar vehicle) "used under contract in behalf of" the named insured. *See, e.g., Sprow v. Hartford Ins. Co.*, 594 F.2d 418, 422 (5th Cir.1979); *Kelly v. Phoenix Assurance Co. of N.Y.*, 225 F.Supp. 562, 565 (D.Md.1964). Other policies, such as the one at issue in this case, do not define the term. The policy issued by Brethren required it to pay, among other things, all sums that Bingo World was obligated to pay as damages "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" "Covered autos," in turn, embraced (as relevant here) "hired autos only," in particular "those 'autos' you [the named insured] lease, hire, rent or borrow." In answer to the question "Who is an Insured?," the term "hire" appears once more in the policy. An "insured" includes, as relevant here, the named insured or "[a]nyone else while using with your permission a covered 'auto' you own, hire, or borrow."

■ The parties have cited, and our research has found, only one relevant Maryland decision interpreting a "hired auto"

provision.[2] In *Fisher v. Tyler*, 284 Md. 100, 394 A.2d 1199 (1978), the issue before the court was the application of a coverage provision regarding "any hired automobile," which the policy defined as a motor vehicle "used under contract in behalf of, or loaned to, the named insured." *Id.* at 1201. Significantly, however, the court took as its starting point the distinction between the policy in a case on which the trial court had relied primarily, *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Hartford Accident & Indem. Co.*, 310 F.2d 618 (4th Cir.1962), where "the term 'hired' was not further defined in the contract of insurance," and the policy at issue in *Fisher* where "'hired automobile' is specifically defined":

> The term "hired," not being otherwise defined within the policy in *Pennsylvania Threshermen*, conveyed the normal meaning of that word. In that context, a "hired" automobile is one whose temporary use has been engaged for a fixed sum. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1072 (unabr. ed.1976)[;] 12 G. Couch, *Cyclopedia of Insurance Law* § 45:263, at 289 (2d ed.1964).

*Fisher*, 394 A.2d at 1202 (internal citations partly omitted). By contrast, the court continued, "the ... policy [at issue in *Fisher*] spells out *a more expansive interpretation* of that term for it includes within its definition the phrase 'used under contract in behalf of, or loaned to' [the named insured], thereby giving the word

**2.** As stated at the beginning, the parties agree that Maryland law governs disposition of this case. Even without that agreement, this court's choice of law doctrine, essentially applying a governmental interest analysis, *see Vaughan v. Nationwide Mut. Ins. Co.*, 702 A.2d 198, 202 (D.C.1997), would yield the same result in a case where (1) the insured, Bingo World, is a Maryland corporation, as is

the insurer, Brethren; (2) the policy was prepared in Maryland and delivered to Bingo World there; and (3) this is not a personal injury action based on the accident occurring in the District, but rather a suit concerning the scope of insurance coverage. *See id.* at 202–03; *Lee v. Wheeler*, 258 U.S.App. D.C. 184, 186 n. 3, 810 F.2d 303, 305 n. 3 (1987).

'hired' *a broader* and somewhat different meaning." *Id.* (emphases added).

The *Fisher* decision thus does two things apposite to resolving the question before us. First, it implies—if it does not hold—that in construing an insurance policy that has left the term "hired auto" undefined, Maryland would define the term according to its normal, dictionary meaning as "one whose temporary use has been engaged for a fixed sum." Second, *Fisher* appears to demonstrate the Maryland court's understanding that that definition would provide more limited coverage than the "broader" or "more expansive interpretation" the court would give to a policy defining hired auto as a vehicle "used under contract *in behalf of,* or loaned to" the named insured (emphasis added). But the *Fisher* decision does a third relevant thing as well. After noting the paucity of Maryland caselaw interpreting the phrase "used under contract in behalf of," the court explained that in such circumstances Maryland courts look to the way in which "the courts of our sister states" have read similar provisions, the assumption being that "parties who adopt an insurance policy, which apparently has had nationwide use and has been judicially construed in five or six states, adopt with it the uniform judicial construction that it has received in other states." *Id.* at 1203 (citation and internal quotation marks omitted).

> In other words, while the contract term on its face may be ambiguous, which under other circumstances would ordinarily generate a jury question, a court in this situation may treat the term as unambiguous and, absent any factual dispute, adopt, as a matter of law, that

construction placed on the language by the courts of other states.

*Id.* (citations omitted).

*Fisher* thus teaches that in further defining the term "hired auto"—meaning, absent definition by the policy, "one whose temporary use has been engaged for a fixed sum"—Maryland will look to the understanding of the term that prevails in other jurisdictions. And here a leading commentator on the subject (on whom the court relied in *Fisher*) instructs us that "[t]he key inquiry regarding whether an automobile will fall within the hired automobiles provision of the policy is whether the insured exercised dominion, control or the right to direct the use of the vehicle." Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE § 118.46, at 118–74 (3d ed.1997) (hereafter COUCH). *See also, e.g., Toops v. Gulf Coast Marine Inc.,* 72 F.3d 483, 487 (5th Cir.1996) (citing cases); *Wolverine Ins. Co. v. State Auto. Mut. Ins. Co.,* 415 F.2d 1182, 1184 (6th Cir.1969) ("The right to control of equipment is generally regarded as the critical distinction between the 'hired automobile' and the 'nonowned automobile' for insurance contract purposes"). Indeed, a sizeable number of courts have held that "for a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control." *Sprow,* 594 F.2d at 422 (citing cases). Relatedly, courts have held that "[a]utomobiles which are owned and being used by ... independent contractors hired by the insured will not constitute hired automobiles ... because, under most circumstances, the ... independent contractor exercises independent control over the vehicle, not the insured." COUCH § 118.46, at 118–75 (citing cases).[3] Appel-

---

3. Given these authorities, the unexplained assertion of the court in *Pawtucket Mut. Ins. Co. v. Hartford Ins. Co.,* 147 N.H. 369, 787 A.2d 870, 873 (2001), that "the common definition of 'hire' does not require an element of con-

lants argue that most of these cases, emphasizing the presence or absence of control, are inapposite because the policies at issue in them defined a hired auto as being used "in behalf of" the named insured—provisions appellants regard as "necessarily more restrictive than undefined provisions" (Br. for App. at 24). That argument does not impress us, however, given the Maryland court's contrary understanding in *Fisher* that provisions defining "hired auto" in terms of a contractual use "in behalf of" the named insured connote a "broader" or "more expansive interpretation" than do those, such as the one in question here, that leave the term undefined. *Fisher*, 394 A.2d at 1202.[4]

In keeping with these decisions of other courts, the trial judge here correctly viewed the dictionary definition of a "hired auto" adopted by *Fisher* (*i.e.*, "one whose temporary use has been engaged [by the insured] for a fixed sum," *id.*) as signifying the exercise of control by the named insured over matters such as the choice of vehicle, where it is to travel, by what routes, and for what purposes. And, as the judge also recognized, the related policy provision governing "Who is an Insured" reinforces this meaning by limiting the covered use by persons other than the named insured to use "with . . . permission" of the latter, with the authority in the named insured that phrase implies to control the purpose and manner of the use.

For these reasons, we have no doubt that in construing the "hired auto" provision of the Brethren policy, the Maryland courts would require the exercise of, or the right to exercise, *at least some control* over an automobile by the named insured before concluding that the vehicle was covered by the policy. And that is all that we need hold in order to decide this case, because on the undisputed facts Bingo World cannot be said to have exercised even nominal control over the use of Harris' van.[5] Bingo World contracted with Harris to the extent, but only the extent, that it paid him fifteen dollars per head for each player Harris brought to the bingo parlor. As the trial court explained, Bingo World had no control over Harris' choice of van, who would drive it or what routes the driver would follow, and how many players he would bring or even whether he would show up with customers on a given night. Harris had exclusive control over his choice of passengers—for all Bingo World knew, he transported riders to other locations on the same trip that brought some to Bingo World. In reality, Bingo World did not hire Harris' van but rather his service of finding and transporting customers (it does not matter that Bingo World would forward him the names of players who had inquired about transportation), paying him only if and to the extent he appeared at the door with them. That relationship, contrary to appellants' argument, is not analogous to hiring a taxi or limousine and driver[6] where, in return

---

trol" must be considered a distinctly minority view.

**4.** *See also Bituminous Cas. Corp. v. Travelers Ins. Co.*, 122 F.Supp. 197, 202 (D.Minn.1954) (although "[t]he term 'hired automobile,' generally speaking, refers to a vehicle used under a contract of rental[,] . . . it is evident that the provisions in this policy [defining 'hired automobile' as one 'used under contract in behalf of, or loaned to, the named insured'] contem-

plated a broader and more comprehensive coverage than that").

**5.** Thus we need not decide, for example, whether Maryland would categorically exclude vehicles used by independent contractors from the definition of a hired auto.

**6.** See Reply Br. for Appellants at 4 (arguing that in light of "Brethren's acknowledgment on Brief that the 'hired auto' portion of the Policy provides coverage for taxis and limou-

for a fare or fee, the person hiring acquires significant control over who is to occupy the vehicle, its destination, and the route it is to take in getting there.

Applying Maryland law, we thus conclude that its courts would find no ambiguity in the "hired auto" provision of Brethren's policy as relates to this case, and would hold as a matter of law that it provides no coverage for the van used by Harris' driver. We therefore sustain the grant of summary judgment to Brethren.

*Affirmed.*

---

sines[,] . . . coverage must be resolved in favor of the Estate'').